# J. F. ORNE v. S. R. FRIDENBERG ET AL.

APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS
NO. 1 OF PHILADELPHIA COUNTY.

Argued April 9, 1891—Decided October 5, 1891.

[To be reported.]

(*a*) Plaintiff filed a bill for a mandatory injunction restraining the main-
tenance of certain structures upon an adjoining lot, in violation of re-
strictive conditions imposed on a conveyance of defendants' lot in 1825.
All the structures complained of were in full view upon the lot for
many years before the bill was filed:

1. A chancellor does not interfere by way of mandatory injunction, even
though the injury be clearly established, when there has been long-
continued delay in asserting the right, and a remedy exists at law;
wherefore, the laches of the plaintiff defeated his right to the relief by
injunction asked for.

2. Moreover, there had been such a change of surroundings in the neigh-
borhood, in the character of the improvements, and in the purposes to
which they were applied, as might well have been deemed sufficient to
justify a chancellor in refusing to restrain the violation of building
restrictions such as were complained of.

3. The plaintiff might have brought his action at law, or he might, as he
did, file his bill for an injunction. While, for the reasons given, he
was not entitled to an injunction, he may still sue at law and recover
damages, if he can show he has sustained any: Per Mr. Chief Justice
PAXSON:

Before PAXSON, C. J., GREEN, CLARK, McCOLLUM and
MITCHELL, JJ.

No. 219 January Term 1891, Sup. Ct.; court below, No. 695
March Term 1881, C. P. No. 1.

On June 3, 1881, John F. Orne filed a bill in equity against
Solomon R. Fridenberg, Samuel M. Fridenberg and Isaac S.
Isaacs, executors and devisees in trust under the will of Louis
E. Fridenberg, to restrain the maintenance of certain alleged
violations of building restrictions, contained in a conveyance
to Thomas C. Rockhill of the premises occupied by the defend-
ants.

The bill averred, in substance, that Edward Shippen Burd,

being seised in fee of a certain described lot with the buildings thereon, now 908 Chestnut street, bounded on the east by another lot of the said Burd, now 906 Chestnut street, on which latter stood a large house with wings, the residence of said Burd, and a stable and coach-house in the rear on George (now Sansom) street, by deed dated July 9, 1825, duly recorded, conveyed the said lot and buildings, 908 Chestnut street, to Thomas C. Rockhill in fee, upon the express condition that all the buildings, then on said lot, should, within one year from said date, be prostrated, and that said Rockhill, his heirs or assigns, should "not at any time thereafter erect or build, or permit or suffer to be erected or built on said lot, any buildings other than privies, milk or bathing houses, walls, or fences, not exceeding nine feet in height from the surface of the curbstone immediately in front of the said lot," excepting a messuage on the Chestnut-street front " not exceeding sixty feet in depth," with a piazza to the south for a staircase "not exceeding twenty-five feet in depth," and a stable and coach-house on the George (now Sansom) -street front, which was not to be higher nor extend farther north than the stable and coach-house of said grantor Burd then standing on his said mansion-house lot on the east; also that the north wall of any building to be erected on the Chestnut-street front should be built precisely on a line east and west with the north wall of the west wing of said Edward Shippen Burd house, which was ten feet one inch and five eighths of an inch from the south line of Chestnut street, and that " the ground between the said north wall of the said building, so to be erected on Chestnut street, and the south line of the said Chestnut street, shall be forever left open for a public pavement and footway, free from every obstruction or encumbrance whatever, except steps, cellar-doors, and scrapers."

That said Burd died in 1848 leaving a will and codicils, by force of which and of subsequent conveyances, the premises on the east, 906 Chestnut street, became vested in 1875 in John F. Orne, the plaintiff, in fee-simple; and that the premises, 908 Chestnut street, by divers mesne conveyances and devises had become vested in said Solomon R. Fridenberg and the other defendants, as trustees under the will of Louis E. Fridenberg. It was averred, further, that the stable and coach-

house of the said Burd, at the time of the said conveyance to Rockhill, was of certain dimensions and height stated; and that the defendants had violated and were violating said restrictions and the easement created thereby, by permitting and maintaining the following erections, structures, and buildings upon said lot, 908 Chestnut street, to wit:

(*a*) A brick building, on George, now Sansom street, and a frame building annexed thereto, north (south ?) of the house, fronting on Chestnut street, which buildings were neither a stable, coach-house, privy, milk, nor bath house, wall or fence, but a tavern and drinking and concert saloon, and were more than nine feet high above the Chestnut street curb, the frame building extending in depth farther north than the said stable and coach-house on the Burd homestead lot adjoining on the east.

(*b*) A frame building adjoining the piazza of the said house on Chestnut street, on the south thereof, and exceeding nine feet in height above the curbstone in front of the property.

(*c*) A structure, obstruction, and encumbrance upon the ground between the north wall of said building, 908 Chestnut street, and the south line of said street, being neither steps, cellar-doors, nor scrapers, but an extension of the first-story front part of said building.

That the erections complained of were in violation of the ordinance of Philadelphia of April 11, 1863, prohibiting wooden and brick-paned [?] buildings, were dangerous on account of fire to the plaintiff's buildings on his adjoining lot, filled with valuable merchandise, materially injured the value of plaintiff's property, and interfered with the free access of light and air, and approach thereto.

Upon said averment, the bill prayed: (1) That defendants answer; (2) That they be restrained from keeping and maintaining said erections and buildings, in violation of the said restrictions; (3) That defendants be ordered to remove said tortious erections; and (4) For further relief.

The defendants' answer denied the material averments of the plaintiff's bill and inter alia, averred:

" The physical condition of said lot No. 908 Chestnut street, as to erections, structures, and buildings, is now and was when said bill was filed, and has been since the said defendants' testator first viewed and bought the same on November 1, 1875,

unchanged and identically the same; and, to the best of these defendants' several knowledge, information and belief, such present condition had then existed for more than twenty-one years previously; with these exceptions only, that the building occupied by Mr. Monaghan [a tenant] has, since the date of said deed, been enclosed, and some betterments have been done to the front building, not however increasing its size."

Issue having been joined, *Mr. James S. Nickerson* was appointed examiner; and on October 10, 1888, the examiner having filed his report, the cause was referred to *Mr. John M. Collins*, as master.

On August 23, 1890, the master filed his report, wherein he found, in substance, that on July 9, 1825, Edward Shippen Burd had conveyed to Thomas C. Rockhill lot now 908 Chestnut street, with the conditions and restrictions contained in the deed as averred in the plaintiff's bill; that, thereupon Rockhill occupied the premises, and while he was the owner thereof complied with said conditions and restrictions; that subsequent owners of the premises, many years at least before the bill was filed, erected buildings upon the lot substantially of the character and position and occupied and used substantially as averred in the plaintiff's bill, and were in violation of the conditions and restrictions contained in the deed from Burd to Rockhill.[1 to 7]

Upon his findings of fact, the master reported his conclusions of law in part as follows:

1. The question arising in this case is important, touching the right to and value of the easement which the plaintiff claims has been violated by the defendants. This easement is in itself a very valuable property, in a pecuniary point of view, worth doubtless many thousands of dollars to the plaintiff owner, and the property No. 908 Chestnut street would sell for an amount proportionately less on account of being subject to said restrictions the right to which in the plaintiff constitutes the easement. And, although there is no evidence as to the value of the said property, No. 908, yet it may be assumed that, when said Louis E. Fridenberg bought said property in the year 1875 for $27,500, subject to mortgages for $45,000, he gave much less than said property would have sold for if it

had been free of said restrictions. The said restrictions, if enforced, are of great value in another sense to the dominant lot, the restricted space affording light and air to workmen, through a large number of windows in the west wall of said Orne's storehouse. The use of said space is not merely a convenience, but it is necessary to the enjoyment of the plaintiff's premises. The right, however, to the easement in this case which has been violated, depends in nowise on its utility, or even necessity, but upon a contract, having originated in a grant (as above recited) from E. S. Burd, who necessarily paid for the easement by an allowance or deduction from the consideration for which he conveyed said property, No. 908 Chestnut street, to said Thomas C. Rockhill, his heirs and assigns.

2. It is stated above that if said restrictions created by said Burd in his grant to Rockhill, his heirs and assigns, etc., are valid and subsisting restrictions, then that said long frame building and said bulk-window and the Clinton frame building are manifest violations thereof; and that the permitted use of said brick building on Sansom street for any other purpose than that of a stable and coach-house, without the owner plaintiff's consent, is also a violation thereof. The master now submits that the said restrictions are valid and subsisting restrictions, entitling the owner of the property, No. 906 Chestnut street, to the interference of a court of equity by injunction to restrain the continuance of such violations. As to the right of the owner plaintiff to the benefit and advantage of said restrictions, and of the liability of said defendants, trustees, and their land to bear the burden of the restrictions, there can be no dispute. . . . .

[Said restrictions are in apt words to create a conditional estate in fee in Thomas C. Rockhill, his heirs and assigns.][8] By the terms of the grant they were made expressly operative upon the assigns of said Rockhill. They, therefore, ran with the land, because the liability to conform to said restrictions passed to the assignees of the land, No. 908; and so the easement, or right to take advantage of said restrictions, reserved by said grantor Burd, ran with his other land adjoining on the east, for the benefit of which the easement was created, because it passed to the successive assignees of said other land. And, even if it had not run with the land, in a strict sense, it would

Master's Report.

be enforced against all purchasers who took with notice of it. This common-sense view was taken by Lord COTTENHAM in Tulk v. Moxhay, 2 Phill. Ch. R. 774, and it has been followed in Luker v. Dennis, 7 Ch. Div. 227; 47 L. J. Ch. 174. Now, these defendants, Fridenbergs and Isaacs, as well as their testator, had full notice of all the restrictions created by Mr. Burd. It would be idle to say otherwise. They are on the face of every deed in the title, including that to Louis E. Fridenberg. Grantees of land subject to restrictions are affected with knowledge of all information necessary to observe the restrictions: Whitton v. Whitton, 38 N. H. 127 (75 Am. Dec. 163); Rowell v. Jewett, 69 Me. 293.

—Citing and considering Clark v. Martin, 49 Pa. 289; Whitney v. Railway Co., 11 Gray 359; Peck v. Conway, 119 Mass. 546; Bear v. Whisler, 7 W. 148; Linzee v. Mixer, 101 Mass. 512; Tobey v. Moore, 130 Mass. 448; Bank v. Marshall, L. R. 40 Ch. Div. 112, the master held that the acceptance by the grantee of a title expressed to be subject to such restrictions, though the deed was signed only by the grantor, amounted to a covenant which ran with the land;[10] and, citing further upon the same point, Trull v. Eastman, 3 Met. 121; Hartung v. Witte, 59 Wis. 285; Burbank v. Pillsbury, 48 N. H. 475 (97 Am. Dec. 633); Kellogg v. Robinson, 6 Vt. 276 (27 Am. Dec. 550); Atlantic Dock Co. v. Leavitt, 54 N. Y. 35 (13 Am. Rep. 556); Bowen v. Beck, 94 N. Y. 86 (46 Am. Rep. 124); Wilcox v. Campbell, 35 Hun 254; Kentucky Cent. Ry. Co. v. Kenney, 82 Ky. 154, he proceeded:

No matter whether the stipulation or restriction in the deed amounts to a covenant or not, or is a strict condition, an injunction is proper, and by that high remedial writ a court of equity will enforce the agreement, express or implied, against a party purchasing with notice of it. As Lord COTTENHAM said in Tulk v. Moxhay, 2 Phill. Ch. R. 777–8, "If an equity is attached to the property by the owner, no one purchasing with notice of that equity can stand in a different situation from the party from whom he purchased."

Said restrictions, then, operating as a covenant, the case of St. Andrew's Church's App., 67 Pa. 512, is in point, as bearing upon the violation of said restrictions by said defendants, trustees, in permitting Monaghan to use the brick building on

*Master's Report.*

Sansom street as a saloon and dance-house under a lease the sudden termination of which by an injunction the said defendants deprecated in their answer. In that case, there was a mutual covenant between grantors and grantees that the lots should be subject to the restriction that none of them should "be used for purposes other than a dwelling-house, office, privy, coach-house or stable," etc.; and the defendants were about to erect a church, and it was contended, inter alia, that the contemplated edifice was not against the spirit of the covenant. But the court, SHARSWOOD, J., held that the purpose of the restriction was not material, nor whether the inconvenience was greater or less to the grantor or his assignees; that if a church should be allowed, the covenant would be at an end; "there would be nowhere any power to restrain its application to any purpose not a nuisance in itself. To protect himself, therefore, from such a consequence, it was the clear right of the plaintiff to stand upon the covenant, even though the erection of a church might not prove of any actual inconvenience or annoyance to him so long as it was only used as a church."

In the present instance, the permitted use of said Sansom-street house as a drinking-saloon and dance-house was a gross violation of said restrictions; but, to whatever innocent uses said defendants may offer to apply said building, the principle of the above case makes it clear that the owner plaintiff in this cause has the right to stand upon the covenant which has run with and binds the land of the defendants, that said building shall not, without the consent of said plaintiff, be used for any other purpose but that of a stable and coach-house; and he has the right to ask the court for an injunction to restrain said defendants from using it, or permitting it to be used, for any other purpose without his consent. It is not to be supposed that such consent will be unreasonably withheld, but it is necessary to any other use; otherwise, as Judge SHARSWOOD said, "the covenant" (or easement) "would be at an end."

—Considering upon other questions arising: Brady v. Weeks, 3 Barb. 157; Bemis v. Clark, 11 Pick. 452; Staple v. Spring, 10 Mass. 72; Erb v. Brown, 69 Pa. 216; St. Mary's Church v. Miles, 1 Wh. 229; Banner v. Angier, 2 Allen 128; Farrar v. Cooper, 34 Me. 394; Heath v. Bucknell, L. R. 8 Eq. 1; Hall v. Swift, 4 Bing., N. S., 381; Duke of Bedford v. British Museum, 2 M. & K. 552, the master concluded:

6. It being quite clear the owner plaintiff in this case is entitled to the benefit of said restrictions, and that [the defendants, said Fridenbergs and Isaacs, violated, and are now continuing to violate the said restrictions,] [13] [an injunction ought to be issued against said defendants to prevent them from continuing the wrong.] [14]

A mandatory injunction is clearly within the power conferred by § 13, act of June 16, 1836, P. L. 789, which provides:

"The . . . . . Court of Common Pleas shall . . . . . have the power and jurisdiction of courts of chancery, so far as relates to—

" V. The prevention or restraint of the commission or continuance of acts contrary to law, and prejudicial to the interests of the community or the rights of individuals."

[The damage to plaintiff from the violation of said restrictions, and the continuance thereof, is not adequately remediable at law,] [15] and the inadequacy of any remedy at law is a sufficient equity to warrant an injunction in this cause ; and, the injury being constantly recurring and continuing, an injunction is the only remedy to avoid a multiplicity of suits and suppress litigation.

The distinction is obvious between the enforcement of " an equity attached to the property," such as an easement, the breach of which cannot be adequately compensated in damages, and the enforcement of covenants to pay rent and the like, the non-performance of which is capable of being fully compensated in damages : See Tulk v. Moxhay, 2 Phill. Ch. R. 774.

In Webb v. Portland, 3 Sim. [Sumn.] 189, it was said by STORY, J., of a diversion of water : "If the diversion is a violation of the right of the plaintiffs, and may permanently injure that right, and become by lapse of time the foundation of an adverse right in the defendant, I know of no more fit case for the interposition of a court of equity by way of injunction."

An injury is irreparable, so as to authorize an injunction, where its continuance must occasion a constantly recurring grievance, as where an easement or servitude is annexed by grant, covenant, or otherwise, to a private estate. Equity will interfere by injunction in furtherance of justice and the violated rights of the party, or to protect the due and quiet enjoyment of the easement against encroachments : Webber v. Gage, 39 N. H. 182.

The amount of actual injury, where a right is involved, or where adverse use might ripen to a right, is held not to be material: Corning v. Troy, 34 Barb. 485.

The jurisdiction of equity by way of mandatory injunction is too firmly established to admit of a doubt: High on Inj., 3. Injunctions of this class have been granted, e, g., against continuing the removal of the stop-gate of a canal, as in Robinson v. Lord Byron, 1 Bro. C. C. 589 [?]; against permitting stables to remain which had been wrongfully built in an ornamental garden, etc.: Lane v. Newdigate, 10 Ves. 194; Rankin v. Huskisson, 4 Sim. 13, and other cases. In the latter case it was considered proper to restrain defendants from permitting such part of the buildings as they had already erected wrongfully to remain.

The projection of the cornice and window-sills over defendants' lot do not affect the plaintiff owner's title to the relief by injunction under the circumstances, he having offered to remove said projections, which must be done before final decree: Daniell's Ch. Pr., 989, 990; Schaidt v. Bland, 66 Md. 141.

—To the report of the master, the defendants filed exceptions, alleging, inter alia, that the master erred:

1–7. In his findings of fact. [1 to 7]

8, 10, 13–15. In his several conclusions of law embraced in [ ] [8 10 13 to 15]

On December 15, 1890, said exceptions having been argued before the court in banc, an order was made, without opinion filed, dismissing the exceptions, confirming the master's report, and entering a decree in part as follows:

" That the said defendants, . . . . and each of them, be enjoined from keeping and maintaining, or permitting to remain, the said bulk window, with its surroundings as above and in the said report particularly described, and from keeping and maintaining, or permitting to remain, the said two frame-buildings between the Chestnut-street front building and the back building on Sansom street, as above and in said report particularly described; and, further, from using, or permitting to be used, the said brick building on Sansom street for the purposes of a saloon or dance-house, or any similar use, by whatever name called or known, and from all use or application of said build-

Arguments.

ing for any purpose whatever except that of a stable and coach-house only, without the consent of the said owner plaintiff, [now] Henry C. Gibson, his heirs or assigns ; and, further, from erecting or building, or permitting or suffering to be erected or built on the said lot of ground any buildings whatever other than those allowed by said restrictions and provided for in the said indenture from said Edward S. Burd to Thomas C. Rockhill of the ninth of July, 1825. And it is further ordered, adjudged and decreed that a writ of injunction do issue forthwith against the said defendants, commanding them to comply with all and singular the premises so enjoined upon them ; and further, that the defendants do pay the costs of the cause.

" This decree, however, not to be enforced until the plaintiff remove the projection of the cornice and window sills of his building over the defendants' premises, if required by them."

Thereupon, the defendants took this appeal, specifying that the court erred, inter alia :

1–7. In dismissing defendants' exceptions.[1 to 7]

8, 10, 13–15. In dismissing the defendants' several exceptions.[8 10 13 to 15]

16. In entering the foregoing final decree.

*Mr. F. Carroll Brewster* and *Mr. John G. Johnson*, for the appellants :

1. The statute of limitations bars the plaintiff's right to prohibit a use of the Sansom-street stable, for purposes other than those of a stable and coach-house. The premises are no longer used as a concert- and drinking-saloon; they are now occupied by the Edison Light Company as an office. But the injunction is against the right to use the building for any other purpose than that of a stable and coach-house. As early as 1859 or 1860, Clinton, a former owner, converted this stable into a brush factory, and used it for that purpose until his removal in 1870. The building does not appear to have been used as a stable for thirty years. We submit that all right to restrict the use of this building, within the terms of the original conditions, is barred by the statute. There has been a continuous adverse user for other purposes, sufficient, under the most strict construction of the statute, to bar any right to complain, even in a court of common law.

Arguments.

2. The plaintiff is barred by his laches from demanding equitable relief concerning the uses and structures complained of. All the structures complained of were erected long prior to the filing of the bill. It is averred in the answers, and is to be taken as true, in the absence of evidence to the contrary, that they were all erected twenty-one years prior to 1875. The plaintiff's building was erected many years before the bill was filed. He saw, and could not fail to see the structures through his western windows. He could not enter or leave his own building, without seeing the bulk-window in front of the Chestnut-street store. He permitted years to elapse without making objection, and in the meantime new rights had accrued. A chancellor does not interfere, even if the fact of injury be established, by way of injunction, certainly not by way of mandatory injunction, where there is a remedy at law, and after the plaintiff has slept upon his rights for a much shorter time: German R. C. Asylum's App., 115 Pa. 165; 2 High on Inj., 1159; Mitchell v. Steward, L. R. 1 Eq. C. 541; Roper v. Williams, 12 Eng. Ch. 23.

3. The character of the locality in which the premises are situated has changed to such an extent that the restrictions, or many of them, imposed in 1825, are no longer operative. To require that the defendants shall now erect on the rear of their lot nothing but privies, milk-houses, and bath-houses, would be to require that they should maintain vacant a space originally designated for securing light and air for a residence long since demolished. The plaintiff is not suing at common law for a breach of covenant. He is demanding the assistance of a chancellor, and he may not expect it unless he show a grievance not adequately redressible by a court of common law. Relief by the enforcement of restrictive conditions has been refused repeatedly by a court of equity, where, by reason of a change in the character of the locality, it appeared that the attempt of the plaintiff to enforce the covenant was unreasonable: Page v. Murray, 46 N. J. Eq. 325; Columbia College v. Thacher, 87 N. Y. 319; Peck v. Matthews, L. R. 3 Eq. C. 517; Sayers v. Collier, L. R. 24 Ch. D. 100; Duncan v. Railway Co., 85 Ky. 825.

4. The plaintiff is not entitled to relief in equity by way of mandatory injunction or otherwise. In this case, the master

practically admitted, what the responsive answer averred, without any disproof, that no damage was done to the plaintiff by the structures complained of. The restrictive conditions imposed to secure light, air and quiet, will not in any way be interfered with. And the enforcement of the decree that has been entered would work very great injury to the defendants, and do no possible good to the plaintiff, whose laches has disentitled him to equitable relief even if good could have been accomplished. Wherefore, this court will not grant equitable relief, to enforce restrictive covenants, like those existing in the present case, where the only reason plaintiff can get no redress is that he has not been injured: Water Lot Co. v. Bucks, 5 Ga. 315; Mayer's App., 73 Pa. 164; Kerr on Inj., 188, 189, 190; Attorney General v. Nichol, 16 Ves. 338; Jacomb v. Knight, 32 L. J. R., N. S., Ch. 601.

*Mr. George L. Crawford* (with him *Mr. George M. Dallas*), for the appellee:

1. It is argued that the plaintiff is not entitled to relief in equity. But it is submitted that the restrictions in this case are in apt words to create a conditional estate in Rockhill and his assigns; that they are fully expressed, and are of a kind, being against certain uses of the land and structures over a certain height, or any structures at all upon defined spaces in a built-up locality, favored in equity and valid: Bear v. Whisler, 7 W. 149; Gray v. Blanchard, 1 Shars. L. C. on R. P., 122, 123, 124; Shep. Touch., 121, 132; 1 Co. Litt., 203, 206; Clark v. Martin, 49 Pa. 289; Wharton's Note, 1 Am. L. Reg., N. S., 491; St. Andrew's Church's App., 67 Pa. 512; Kemp v. Sober, 1 Sim. Ch., N. S., 520; Clement v. Wettes, L. R. 1 Eq. 200; Fielden v. Slater, L. R. 7 Eq. 522; Linzee v. Mixer, 101 Mass. 512; Tobey v. Moore, 130 Mass. 448; Washburn on Easements, 112, *63; Whitney v. Railway Co., 11 Gray 359; no request to perform, demand, or notice being necessary: 1 Shars. L. C. on R. P., 132, 136, 145; Whitton v. Whitton, 38 N. H. 127 (75 Am. Dec. 163); Rowell v. Jewett, 69 Me. 293; and performance is not excused because the person to perform is a feme-covert, a minor, or a trustee, and is enforceable in equity: Shep. Touch., 120; Garrett v. Scranton, 3 Den. 334; Barker v. Colb, 36 N. H. 344; Cross v. Carson,

Arguments.

8 Blackf. 138 (44 Am. Dec. 742); Reed v. Stouffer, 56 Md. 236; Univ. Soc. v. Dugan, 65 Md. 460, 468.

2. That the defences of the statute of limitations, or laches, are not to be supported in this case, is apparent. No facts exist for their application. Besides, lapse of time, silence, or mere indulgence after a breach, is no waiver: 1 Shars. L. C. on R. P., 118, 122. The restrictive conditions are permanent and continuous. The waiver of one breach and of forfeiture therefor is not a waiver of a recurring breach of a continuous condition, or a waiver of the condition itself or of a conjoined condition: 1 Smith L. C., Am. ed., 1885, 108, 110, 117–121; Hamilton v. Kneeland, 1 Nev. 60; 1 Shars. L. C. on R. P., 147, 148; Becker v. Werner, 98 Pa. 555. Laches is no defence as to future prevention, if there be no estoppel: Menendez v. Holt, 128 U. S. 523; Society v. Low, 2 Green C. E. 20. And the equitable remedy to enforce a legal vested executed right or interest, as distinguished from a mere equitable right, is not affected by laches merely, short of the common-law bar to the right: In re Maddever, L. R. 27 Ch. Div. 527, 531; Clarke v. Hart, 6 H. L. 646, 654; Campbell v. Seaman, 63 N. Y. 568, 585 (20 Am. Rep. 567).

3. Upon the affirmative allegation of the defendants that the restrictions are obsolete, the reasons for them being gone, and the uses of the properties and neighborhood radically changed, requiring proof by the defendants, no evidence was offered. It is not true in fact. The grantor in the deed manifested in the most positive way his intention to create, secure, and continue these restrictions, for the benefit of the future improvement of his lot. Their value was, not only to secure light and air to the adjoining property, but to lessen the risk of fire and annoyance from many uses to which the prohibited structures might be devoted: Yeaton's App., 105 Pa. 127. Besides, these restrictions are a contractual obligation, enforceable without value measurable by a jury in a common-law action, according to common-law measures of damage, and though not amounting to an enjoinable nuisance: St. Andrew's Church's App., 67 Pa. 519; Fielden v. Slater, L. R. 7 Eq. 530; Kirkpatrick v. Peshine, 24 N. J. Eq. 206, 216; Heatley v. Benham, L. R. 40 Ch. D. 91. If defendants for any reason succeed in escaping this equitable process, the decree should be made without prejudice

to the plaintiff's other remedies for the enforcement of these continuing obligations.

OPINION, MR. CHIEF JUSTICE PAXSON:

This was a bill filed in the court below to restrain the defendants, who are the appellants here, from continuing to maintain certain erections on the premises 908 Chestnut street, Philadelphia, upon the ground that they were erected in violation of certain building restrictions imposed upon said property by Edward Shippen Burd, when he sold and conveyed it to Thomas C. Rockhill in 1825. The title to the adjoining or Burd property has been vested by numerous mesne conveyances in the plaintiff, and the Rockhill property is now owned by the appellants as testamentary trustees.

The three principal matters complained of in the bill are: (a) A stable and coach-house on Sansom street; (b) a bulk window on Chestnut street; and (c) two frame buildings between the Chestnut-street front building, and the back buildings on Sansom street. The court sustained the bill, and awarded the injunction prayed for. As to the stable, the injunction merely prohibited its use "for any purpose whatever, except that of a stable and coach-house." It could not have been any broader, for the reservation expressly permitted its erection, nor did the reservation limit its use or occupancy further than may be implied from the designation of the building as a "stable and coach-house." As to the other buildings, the injunction was mandatory, and the decree is broad enough to require their destruction.

The answer avers that the erections complained of are the same that existed on the premises when the defendants' testator first viewed and bought the premises in 1875, and had then existed for more than twenty-one years previously. There is no finding by the master which essentially contradicts the answer in this respect. Exact dates are not very material, in our view of the case, as it is undisputed that all the structures were there many years before this bill was filed.

The plaintiff had a choice of remedies. He might have brought his action at law, or he might, as he did, file his bill. By adopting the latter remedy he submitted his case to the conscience of a chancellor, who will or will not enforce a mere

legal right, as the equities of the case demand. A chancellor does not, and ought not to interfere by way of mandatory injunction, even though the injury be clearly established, where there has been long-continued delay in asserting the right, and a remedy exists at law. The plaintiff had only to look out of his side windows to see the erections in the yard, and the bulk window on Chestnut street was plainly before him every day as he entered and left his own store. It must not be forgotten that the defendants did not put up the offending building; nor did their testator. He found them there when he purchased the property, and may well have supposed that the restrictions were no longer in force. Be that as it may, the fact remains that the plaintiff was guilty of very gross laches in enforcing his rights. If there is anything well settled in equity, it is that a chancellor will not extend the aid of an injunction where the party has slept for a long time upon his rights. Authorities might be cited without number, were it necessary. I shall refer to a few only.

I find the law upon this subject nowhere better expressed than in 2 High on Inj., 1159. It covers the present case so fully that I give the extract at some length:

"In considering applications for relief by injunction against the breach of restrictive covenants contained in conveyances of real property, the courts require due diligence upon the part of the plaintiff seeking the relief, and laches or acquiesence on his part in the violation of the restrictive covenant will ordinarily defeat his application. Indeed, equity requires the utmost diligence in this class of cases upon the part of him who invokes its preventive aid, and a slight degree of acquiesence is sufficient to defeat the application, since every relaxation which plaintiff permits in allowing erections to be made in violation of the covenant amounts pro tanto to a disaffirmance of the obligation. Where, therefore, plaintiff lies by for a period of four or five months, permitting defendants to go on with their erections in disregard of the covenant, he will be denied relief by injunction; and where a vendor of real property takes from each of several purchasers a covenant that he will leave unbuilt a certain portion of the premises conveyed, he will not be permitted to enjoin a breach of this covenant by one of the purchasers, when he has permitted prior purchasers to violate

Opinion of the Court.

it without taking proceedings against them. And, generally, whenever plaintiff stands idly by, and permits the erection complained of to be made, and expenses to be incurred therein, without objecting, his application for the aid of a court of equity comes too late, and will not be entertained. Thus, where purchasers of real estate have bought upon condition that they are to use the land for a specific purpose, and none other, they will not be restrained from using it for other purposes when plaintiff has permitted them to go on without objection, and to incur large expenses in the work proposed, no sufficient excuse being shown for the delay in invoking the aid of equity."

This is the recognized rule in England and this country. See German R. C. Asylum's App., 115 Pa. 165; Mitchell v. Steward, L. R. 1 Eq. 541; Roper v. Williams, 12 Eng. Ch. 23; Water Lot Co. v. Bucks, 5 Ga. 315. In Clark v. Martin, 49 Pa. 289, where a mandatory injunction was awarded to abate a building erected in violation of a restriction, the application was promptly made before its erection. Indeed, I doubt if a case can be found in the books where an injunction has been awarded after the delay that has been shown here.

This practically disposes of the case. Were it necessary to go further, a strong argument might be made against awarding the injunction by reason of the changed circumstances. When Mr. Burd conveyed this property to Mr. Rockhill, in 1825, he lived in the old mansion at the southwest corner of Ninth and Chestnut streets. The lot was over one hundred feet in front, and extended back, with a stable on the Sansom-street front. The house had wings on each side, receding somewhat from the front line of the main building. It was natural that he should restrict the building on Chestnut street, to the line of his wings, and the erection of high buildings in the rear, yet he permitted the erection of a stable and coach-house on the rear of the lot similar to his own. After Mr. Burd's death, the whole scene was changed. The old Burd mansion was demolished, and a row of stores now occupy its site. There is nothing to show that the erections on 908 interfere in any sensible degree with plaintiff's enjoyment of light and air. The stable has not been used for many years as such; it is now used as an office by the Edison Light Company. The location

Syllabus.

is no longer a residential neighborhood, and a stable there would be far more objectionable than its present use, even if it could now be rented for that purpose. This entire change of circumstances and surroundings might well make a chancellor hesitate ere he applied the strong arm of an injunction. There is a line of well-decided cases which hold that such changes in the neighborhood, the character of the improvements, and the purposes to which they are applied, are sufficient to justify a chancellor in refusing an injunction to restrain violations of building restrictions. It is sufficient to refer to Page v. Murray, 46 N. J. Eq. 325; Columbia College v. Thacher, 87 N. Y. 319; Peck v. Matthews, L. R. 3 Eq. 517; Sayers v. Collyer, 24 Ch. Div. 180; Duncan v. Railway Co., 85 Ky. 525.

While we think, for the reasons given, that the plaintiff is not entitled to an injunction, he may still sue at law, and recover damages, if he can show he has sustained any.

> The decree is reversed, and the bill dismissed at the costs of the appellee.

On October 29, 1891, a motion for a re-argument was refused.