### Rome, Appellant, *v.* Rehfuss.

Argued November 15, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*Victor J. Roberts,* with him *High, Swartz, Childs & Roberts,* for appellants.

*Daniel Marcu,* with him *Marcu, Marcu & Marcu,* for appellees.

OPINION PER CURIAM, January 8, 1958:

The decree of the Court below is affirmed on the following excerpts from the adjudication and opinion of Judge DANNEHOWER of the Court of Common Pleas of Montgomery County:

"Plaintiffs seek to enjoin the defendants from using their adjacent lot as the site for a dwelling house, on the ground that the erection of an additional dwelling upon the parcel, of which defendants' lot is a subdivision, would violate a restrictive covenant, imposed by the common owner of plaintiffs' and defendants' respective properties, providing, '. . . that no more than one mansion or dwelling house . . . shall be erected. . . .' on each parcel.

"The action is predicated upon the allegation that the erection of an additional dwelling would violate the literal terms of the covenant and would materially interfere with the plaintiffs' right to quiet enjoyment of their property and cause them irreparable damage.

"To the plaintiffs' complaint an answer was filed denying that the defendants' lot is under and subject to a covenant or restriction; averring that the plaintiff has violated the same restriction; and that the covenant is no longer valid and should not be enforced due to changed conditions in the neighborhood.

"A preliminary hearing was held, exhibits admitted and testimony was heard, all of which were later submitted, by agreement of counsel, in lieu of a final hearing." . . .

"The facts presented in this case indicate that the restriction, which had been imposed upon the land conveyed to Onderdonk in 1893, was for the benefit of the land retained by Lippincott, and since it was a restriction 'touching and concerning' the use of the land itself, it was a 'covenant running with the land' unto and against successive owners in the future. This made the Onderdonk parcel the servient tenement and the land retained by Lippincott the dominant tenement.

"The lot now owned by the plaintiffs and on which they have their dwelling is a part of the land originally retained by Lippincott and is accordingly the dominant tenement with respect to the defendants' lot in the present case. Therefore, the covenant, as to the defendants' lot, is prima facie valid and subsisting, and the plaintiffs, as successors in interest of the dominant tenement, are proper parties to seek its enforcement.

"We see no merit in the defendants' contentions that the plaintiffs are guilty of 'unclean hands' and therefore should be estopped by reason of the fact that the parcel of which plaintiffs' lot is part was also restricted to one dwelling and now contains two. It is true that the plaintiffs' lot is a subdivision of a larger parcel which had been conveyed to Mae Kelly under restrictions against the erection of more than one dwelling upon it, and that at present the parcel con-

tains two dwellings. However, it is undisputed that the plaintiffs were first to erect a dwelling upon the parcel and that development of the remaining lot commenced more than a year later. The plaintiffs therefore have not themselves violated the covenant and accordingly have not surrendered their right to be heard in equity. However, plaintiffs stood by and allowed the Goodwins to build their home in violation of the deed restriction, explaining that they did not realize they had the right to enforce the restrictive covenant.

"The only question remaining for determination then is whether there has been such a substantial change of conditions as to defeat the object and purposes of the covenant and render it unenforceable in equity at the present time.

"It needs to be noted that equity will enforce a building restriction, notwithstanding changes in the neighborhood, where it is established that the restriction is still of substantial value to the owner of the dominant lot: *Landell v. Hamilton*, 175 Pa. 327; *Todd v. Sablosky*, 339 Pa. 504.

"Counsel for plaintiffs contends that the benefit to be secured by the performance of the covenant in the instant case is the right to light and air in the enjoyment of the dominant tenement and that this use and enjoyment constitutes substantial value to the dominant tenement.

"In this we are unable to agree. From our interpretation of the terms of the covenant, it is manifest that Henry Lippincott, the original owner and covenantee, sought primarily to prevent the utilization of the conveyed parcels as sites for certain industries and enterprises which he deemed to be offensive and noxious, and to secure the development of this land into spacious lots containing but a single dwelling costing a minimum of $6000. Upon viewing the neighborhood

at its present time, it is evident that the principal objectives of the covenant have been obtained in that the surrounding community is exclusively residential, consisting of lots with single family dwellings. It is obviously impossible, and no longer desirable, to develop the area into sites for mansion type dwellings as envisioned by Lippincott at the time he began dividing his real estate.

"In view of this change in the character of the neighborhood, the release of all restrictions on the lots bordering the east side of Kent Road, and the violation of the covenant on two of the parcels on the west side of Kent Road, we are of the opinion that enforcement of the literal terms of the covenant would be unreasonable, unjust, impractical and of no substantial benefit to the dominant owners. The benefit of enforcement in this instance would be slight in comparison to the great disadvantage that would enure to the defendants, and prevent the residential use of this lot.

"In the case of Henry v. Eves, 306 Pa. 250, it was said: 'Authority is abundant that changes in the predominant character of a neighborhood in which property subject to a building restriction is located, whether wrought by the acquiescence of adjacent property owners or by the slow yet restless evolution of time, may prevent the rigid enforcement of such a restriction by a court of equity. . . . Where the exigencies of altered conditions in a neighborhood render a strict adherence to the terms of the restrictive covenant useless to the dominant tenement, or absurd, or futile, or ineffective to achieve the end desired, it would be an anachronism to interpose equitable relief in support of it.'

"We are not persuaded by the plaintiffs in their contention that the proposed development of the adjacent lot of ground by the defendants would in any

way interfere with the plaintiffs' right to the physical use and enjoyment of their land; that it would cause them irreparable damage. The testimony and exhibits clearly indicate that the garage, the driveway, and rear of plaintiffs' dwelling faces the defendants' lot and that a line of trees forms the boundary line between the two properties. We cannot see how the erection of a single dwelling upon the defendants' lot would diminish or in any way adversely affect the plaintiffs' right to light and air." . . .

"All the facts in this case lead us to conclude that equity will not lend its aid in enforcement of a restrictive covenant by injunction to render a sizeable building lot useless in a residential area where the character of the neighborhood has changed by the resistless evolution of time, thus rendering it ineffective to achieve the end desired; where the right to relief is doubtful, and especially where the lot on which plaintiffs have built, even though resulting from the Goodwin dwelling, violates the restrictive covenant."

Affirmed and costs to be divided equally between appellants and appellees.

Mr. Justice BELL and Mr. Justice BENJAMIN R. JONES dissent.