Snyder, Appellant, *v.* Plankenhorn.

Argued January 12, 1960. Before BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Paul Woodward Reeder*, with him *Furst, McCormick, Muir, Lynn & Reeder*, for appellant.

*Markin R. Knight*, for appellees.

OPINION BY MR. JUSTICE BOK, March 22, 1960:

In 1885 West Fourth Street in Williamsport was known as Millionaire's Row.

We are concerned with three properties in that Row, numbered 405, 407, and 411. Plaintiff owns and lives in 411 and seeks to prevent defendant Plankenhorn, who owns 407 and has an agreement to sell it to defendants, Stegman, from extending the building to within twenty feet of West Fourth Street. The complaint is that this

would violate existing building restrictions. Construction on the extension has begun but has been halted pending our decision. The court below dismissed the complaint and plaintiff has appealed.

Fine homes were on the three properties at the turn of the century and were on 407 and 411 in 1885. In that year the common owner from whom the present owners of all three lots trace title was a man named Maynard, and he created a restriction that no "dwelling house or other building" should be built on 405 closer to West Fourth Street than fifty feet. In 1889 he created the same restriction for 411 and in 1892 for 407, except that for 407 the restriction ran against "any dwelling house" only, and in both cases no building was to be erected closer to the street than the buildings then on the lots: these were at least fifty feet back in each case. The restrictions on 405 and 407 also specified that no barn or stable should be built on those lots: this does not appear with reference to 411, where a stable may already have existed. It appears that whatever building was built on 405 also set back fifty feet from the street.

It is agreed that for the past twenty years the three lots and the surrounding area have been zoned "business". The buildings on 405 and 411 have been converted to multiple apartment houses, but in each case the building-line restriction has been observed. It is only on 407 that an extension is sought to within fifty feet from the street.

It is agreed that the character of the area has changed. It contains both business and residential structures, but the millionaires, or their modern equivalents, have gone elsewhere.

The turning question is whether, under the admitted facts, Maynard's deed restrictions were created for light and air, as plaintiff-appellant contends, or were

to preserve the character of Millionaire's Row, as the court below found.

The language of the deeds should be read in light of the purpose and conditions of the times when they were made: *Price v. Anderson,* 358 Pa. 209 (1948), 56 A. 2d 215; *Peirce v. Kelner,* 304 Pa. 509 (1931), 156 A. 61; *Dewar v. Carson,* 259 Pa. 599 (1918), 103 A. 343.

We think the court below clearly right in holding that the restrictions were created to preserve the appearance and character of the area as one of luxury and comfort. It would be needless to include in a restriction for light and air a provision against erecting a barn or stable without reference to set-back while requiring set-back for a dwelling, as in the restrictions on 407. And the set-backs in all three deeds are with reference to West Fourth Street but not to the division lines between the lots. There is nothing in the deeds to prevent solid buildings across all three lots, so long as they set back fifty feet from the street.

The changed character of the area should stay the hand of equity. The apposite cases are collected in *LaRue v. Weiser,* 378 Pa. 438 (1954), 106 A. 2d 447, where Chief Justice STERN quoted from *Orne v. Fridenberg,* 143 Pa. 487 (1891), 22 A. 832: "The location is no longer a residential neighborhood, . . . This entire change of circumstances and surroundings might well make a chancellor hesitate ere he apply the strong arm of an injunction. There is a line of well-decided cases which hold that such changes in the neighborhood, the character of the improvements, and the purposes to which they are applied, are sufficient to justify a chancellor in refusing an injunction to restrain violations of building restrictions." See also Restatement, Property, §564.

The *LaRue* case also makes plain that building restrictions are not favorites of the law, which will not be astute to burden land after the restrictions have ceased

to be a substantial advantage to the dominant owner: *Katzman v. Anderson,* 359 Pa. 280 (1948), 59 A. 2d 85; that while an easement for light and air may be acquired by express or implied grant it cannot be acquired by prescription; and that the doctrine of ancient lights is not part of our law.

We see no substantial advantage remaining to the plaintiff, who has yielded to modern life in her neighborhood by putting up commercial signs on her lawn within fifty feet of the street, obviously in violation of the original purpose of the restrictions. The chancellor, who looked at the properties, said: "At the time the buildings were erected, the residents were able to look up and down the street from their front porches and see beautiful and well kept yards. Now front porches are being torn off to make way for business. Business places and signs greet the eye." Plaintiff herself, though without having violated the restriction except by her signs, has an insurance business of her own, and she operates her building as a rooming-house.

There is no robust vestige of the original idea left to impel the arm of equity against the encroachment on 407.

The decree is affirmed at appellant's cost.

Mr. Justice BENJAMIN R. JONES dissents.

---

DISSENTING OPINION BY MR. JUSTICE BELL:

I dissent. The deed for premises 407 West Fourth Street contained the following restriction: "Subject, nevertheless, to the following express terms and conditions, to wit, That he, the said N. Burrows Bubb, his heirs and assigns shall . . . not build or permit to be built upon the lot first above described (407 West Fourth Street), any barn or stable and shall . . . not build or permit to be built or extended any dwelling

house *nearer to West Fourth Street** than the dwelling house thereon now is."

In my judgment, this was a twofold restriction, (1) a restriction limiting the property solely to a dwelling house, and (2) a restriction for light and air on West Fourth Street. In these days everyone knows and zoning authorities and planning commissions emphasize the wisdom and necessity for light and air. Plaintiff, or his predecessors in title, have enjoyed the light and air, which is so important for health and comfort, since 1892. Because business has invaded the neighborhood and West Fourth Street in this block is no longer "millionaires' row", is not and should not be sufficient to obliterate this light and air restriction which is still of substantial health value to the dominant tenement. *Landell v. Hamilton,* 175 Pa. 327, 34 A. 663; *Katzman v. Anderson,* 359 Pa. 280, 59 A. 2d 85.

In *Katzman v. Anderson,* supra, the Court said (pages 284-285) : ". . . Notwithstanding that there may have occurred changes in the character and use of lands and buildings in the neighborhood, equity will restrain a violation of a building restriction if its enforcement remains of substantial value to the dominant tenement: Landell v. Hamilton, 175 Pa. 327, 337, 34 A. 663, 666; Hohl v. Modell, 264 Pa. 516, 519, 107 A. 885, 886; Phillips v. Donaldson, 269 Pa. 244, 250, 251, 112 A. 236, 239; Hunter v. Wood, 277 Pa. 150, 152, 120 A. 781, 782; Benner v. Tacony Athletic Association, 328 Pa. 577, 581, 196 A. 390, 392, 393; Todd v. Sablosky, 339 Pa. 504, 508, 15 A. 2d 677, 679; Price v. Anderson, 358 Pa. 209, 219, 56 A. 2d 215, 220."

The tiny sign "tourists" on plaintiff's property which the Judge saw, but which was not a part of the record, would certainly not be sufficient to invalidate

---

* Italics throughout, ours.

plaintiff's right to equitable relief to protect her right to light and air.

I would reverse the decree of the Court below, and impose the costs on defendants.