### Pape Condemnation

Before Lewis, Brominski and Bigelow, JJ.

*Frank J. Gormley*, for petitioners.

*J. J. McCluskey*, for respondent.

LEWIS, J., March 9, 1964.—This matter comes before us on a rule to show cause why a petition for the appointment of a board of view to assess damages arising from a breach of covenant should not be dismissed and the proceedings quashed.

Petitioners are three property owners in Hazle Township, Luzerne County, who have brought this action against the City of Hazleton to recover damages for a breach of a restrictive covenant. The land in question lies within the area encompassing Thirty-second to Thirty-sixth Streets on both the east and west sides of State Highway No. 309. Petitioners are subsequent grantees from Calvin Pardee, III, and/or Miriam H. Pardee, his wife.

In the deeds to petitioners' lots and to approximately 47 adjoining lots, the following covenant either appears at length or is specifically referred to:

"The Grantee, for himself, his heirs and assigns, hereby agrees with the said grantors, their heirs and assigns, as follows, to wit:

"1. The Grantee, his heirs and assigns, will not use or permit the herein described premises or any part thereof to be used for the purpose of carrying on any trade or business, but the said premises shall be restricted to residential purposes".

It is alleged that all or a substantial portion of the land within the area from Thirty-second Street to Thirty-sixth Street is subject to this restrictive covenant.

On or about June 1, 1962, the City of Hazleton acquired 15 of the 50 properties through condemnation and negotiation for the purpose of expanding the runway and flight path of the Hazleton Municipal Airport in order to accommodate larger aircraft and to provide for the future installation of an instrument landing system. The properties so acquired were razed, and the land leveled off. Upon 11 other properties, the city acquired an easement of air access, which would permit the flight of aircraft at lower levels in the area. There remain 24 other properties within the area upon which the city has deemed it unnecessary to act.

Petitioners requested this court to appoint a board of view, alleging that the lands acquired by the city and their lands are within an area subject to a common covenant restricting the use thereupon to residences, and that the city violated this restrictive covenant by incorporating the acquired lands into an airport, which is a commercial venture. Petitioners seek damages for this violation. Upon an amended petition for the appointment of a board of view, this court appointed viewers on May 7, 1963, to determine the damages allegedly sustained by petitioners.

The City of Hazleton filed an answer to the petition for the appointment of the board of view, which was in the nature of a demurrer combined with a rule to show cause why the petition should not be dismissed and the proceedings quashed. The city alleged as new matter: (1) That the benefit of the covenant in the Pardee deeds did not run to petitioners; (2) that petitioners had acquiesced in repeated violations of the covenant, and thereby abandoned any rights emanating from the Pardee covenant; and (3) that the land acquired by the city for its "approach surface" is vacant ground, and the purpose for which it was acquired will prevent its use for a commercial purpose. Petitioners filed a reply, in which they alleged: (1) That

the lands acquired by the city are, in fact, being used for a commercial purpose; (2) that the properties within this area have been conveyed subject to a restrictive covenant which established a general plan for the development of the area in question, which prohibits the establishment of any commercial enterprise therein; (3) that the amended order for the appointment of a board of view clearly establishes the statutory jurisdiction of this court; (4) that petitioners are the beneficiaries of the covenant of the original grantor of these lands; (5) that the rights of the subsequent grantees are not abandoned by acquiescence to violations of the restrictive covenant; and (6) that any violations of the restrictive covenant are de minimis.

Petitioners are clearly authorized to seek damages in the manner in which they have proceeded. Under the Act of June 23, 1931, P. L. 932, art. XXVIII, sec. 2801, as amended by Act of June 28, 1951, P. L. 662, sec. 28, 53 PS §37801, the City of Hazleton, as a third class city, may "take, use, occupy, injure or destroy" private property in order to effect public improvements. By the terms of the above statutes, injured property owners have a right of compensation for damages resulting from the exercise of the right of eminent domain or the construction of public improvements. Viewers may be appointed to assess these damages: Act of June 23, 1931, supra, sec. 2819; Act of June 28, 1951, supra, sec. 28.4, 53 PS §37819. Our inquiry, therefore, is: Did petitioners sustain any damages to their property rights arising from a breach of a covenant restricting to residential use an area in which the City of Hazleton has established a flight path for a commercial airport?

It is the rule in Pennsylvania that covenants which place restrictions on the use of realty, buildings or other structures and purport to run with the land are to be strictly construed and are not favored in the eyes of

the law: Jones v. Park Lane for Convalescents, Inc., 384 Pa. 268, 120 A. 2d 535 (1956). A restrictive covenant is deemed to run with the land when either the liability to perform it or the right to take advantage of it passes to the subsequent purchasers of the land: DeSanno v. Earle, 273 Pa. 265, 117 Atl. 200 (1922). The test as to whether a restrictive covenant runs with the land is largely to be determined by the intention of the parties, and it must appear from the terms of the grant, or from the situation of the parties and the surrounding circumstances, that it was the intention of the original grantor to create a servitude which would inure to the benefit of the land and be for the benefit of the party attempting to restrain its infringement. Defendant must have had either actual or constructive notice of the restriction: J. C. Grille, Inc. Liquor License Case, 181 Pa. Superior Ct. 456, 124 A. 2d 659, 26 C. J. S., Deeds, 167, page 546.

Petitioners allege that the entire area encompassing their lands and the lands taken by the City of Hazleton was conveyed by a common grantor. In each of the deeds to the 15 lots acquired by the city to make way for the "flight path", there was a notification that the land was subject to a covenant restricting the use of the property. When petitioners, Donald G. Pape and Esther C. Pape, his wife, acquired their lot in 1956, they were informed of the covenant by their grantor, Pio J. DeFant. This covenant is clearly stated in the deed from DeFant to the Papes. The covenant is likewise set forth at length in the deeds to petitioners, Neil Larry DeFluri and Josephine DeFluri, his wife, and Demo R. Calvani and Marie Calvani, his wife. Petitioners, therefore, have specifically alleged that all or a substantial portion of the 50 lots conveyed by Calvin and/or Miriam Pardee were conveyed subject to the heretofore referred covenant.

In our opinion, it is clear that this covenant was in-

tended to run with the land. It was the intention of the Pardees to include this covenant in the deeds to the subdivisions of this large tract for the purpose of developing and improving the entire tract and not for the purpose of ministering to their personal convenience or comfort, or in order to benefit their adjoining land: See Drucker v. Russell, 279 Pa. 443, 124 Atl. 92 (1924):

"A property owner, regardless of whether he is conveying one of several lots of a plan of lots, has . . . a right to dispose of his property with a limited restriction on its use, however much the restriction may affect the value or the nature of the estate": Fanning's License, 23 Pa. Superior Ct. 622, 627 (1903).

Had the Pardees imposed restrictions only on certain lots in the tract which they had conveyed and not on certain remaining lots, it could not be inferred that they intended to restrict such remaining lots without clear and definite evidence of such an intent: Adams v. Field, 297 Pa. 247, 146 Atl. 889 (1929); Price, trustees, v. Anderson, 358 Pa. 209, 56 A. 2d 213 (1948); Witt v. Steinwehr Development Corporation, 400 Pa. 609, 162 Ad 2d 383 (1960). When, however, it is alleged that *all* the lots in a tract are conveyed subject to the same restrictions which are made binding upon all the grantees, their heirs and assigns, it is deemed that this was done for the purpose of developing the tract in accordance with a substantially uniform plan. Under such circumstances, it is not necessary to prove by a preexisting plan or map of the tract that all the lots were to be so restricted. Such a plan is only one means of proving the fact which may be established by other relevant evidence. By alleging that the lands taken by the city and their own lands, all within one tract conveyed by a common grantor, are subject to the same restrictive covenant referred to as stated at length in their deeds, petitioners have established a

covenant running with the land under the rule of the Adams case, supra.

Petitioners clearly have standing to seek damages for the alleged breach of this covenant by the city. The Adams case, supra, held that every owner of a lot in the tract subject to the covenant has the prima facie right to insist that every other owner therein shall comply with the restrictions in his deed from the common grantor. See also J. C. Grille Liquor License Case, supra. The benefit of the restriction need not run to the grantee-promisee alone. Third parties, who are owners of other lots in a tract conveyed by a common grantor, may enforce its terms so long as it is clearly shown that the covenant was for their benefit: Mariner v. Rohanna, 371 Pa. 615, 92 A. 2d 219 (1952) ; Baederwood, Inc. v. Moyer, 370 Pa. 35, 87 A. 2d 901 (1959) ; Restatement, Property, §541. Patently, if petitioners could seek equitable relief to restrain a violation of the covenant, they can now seek legal relief for damages after the violation is consummated.

Having decided that no commercial enterprise is to be undertaken on the land acquired by the city, we must now consider the city's argument that no commercial enterprise is, in fact, being conducted on these lands, which are now and will forever be vacant. There is no merit to this argument. The city admits that the purpose for acquiring these lands was to provide an "approach surface" for the airport. It has been determined by the United States Supreme Court that an "approach surface" is ". . . as necessary for the operation of the airport as is a surface right of way for the operation of a bridge or as is the land necessary for the operation of a dam. See United States v. Virginia Electric Co., 365 U. S. 624, 630". See also Ackerman v. Port of Seattle, 55 Wash. 2d 401, 348 P. 2d 664; Griggs v. County of Allegheny, 369 U. S. 84, 90, 7 L. Ed. 2d 585, 82 S. Ct. 531 (1962). The incorpora-

tion of these lands into the Hazleton Municipal Airport is to use these lands for a commercial purpose, and is a direct violation of the Pardee covenant.

It must now be determined whether there had been such a substantial change of conditions in the area in question prior to the city's taking so as to defeat the object and purposes of the covenant and to render any property right arising therefrom valueless. See Rome v. Rehfuss, 391 Pa. 82, 137 A. 2d 233 (1958).

Evidence adduced by depositions reveals that the area immediately south of the Thirty-second Street line is outside of the area allegedly affected by the Pardee covenant and is a heavily commercial area. On the east side of State Highway 309 in the area between Thirty-second and Thirty-third Streets, one George Suitch has maintained a tourist home for many years and displays a "tourist" sign on the structure. There has been little sign of business activity around this property. On certain lots within the affected area along the east side of the highway, one Gus Genetti has maintained a retail mink shop, which is a part of a large restaurant, motel and catering enterprise which Gus Genetti operates on land south of the Thirty-second Street line. One Clyde Barth maintained a small insurance agency in his home, which was formerly located on Thirty-sixth Street. Petitioner, Mrs. Esther C. Pape, operated an "Original Letter Service" in her home for six months. It is alleged, therefore, that on at least four of the 18 lots in question, a "commercial" activity of some degree was conducted. No proceedings were ever instituted to restrain these alleged violations of the covenant.

If there are substantial changes in a neighborhood, a court may refuse to enforce a restrictive covenant: LaRue v. Weiser, 378 Pa. 438, 106 A. 2d 447 (1954); Orne v. Fridenberg, 143 Pa. 487, 22 Atl. 832 (1891); Rome v. Rehfuss, supra; Snyder v. Plankenhorn, 398

Pa. 540, 159 A. 2d 209 (1960) ; Restatement, Property, §564. In cases of this sort, we are bound to consider the "net effect of the commercial development in the locality": Daniels v. Notor, 389 Pa. 510, 133 A. 2d 520 (1957). A restrictive covenant may, however, be declared to be of "substantial value" to the owners of the dominant lots, notwithstanding certain minor changes in the neighborhood: Landell v. Hamilton, 175 Pa. 327, 34 Atl. 663 (1896) ; Todd v. Sablosky, 339 Pa. 504, 14 A. 2d 677 (1940) ; Katzman v. Anderson, 359 Pa. 280, 59 A. 2d 85 (1948). See also the cases cited in the dissent of Mr. Chief Justice Bell in Snyder v. Plankenhorn, supra. "Substantial value" is defined in Price v. Anderson, supra, at page 219, as ". . . benefit to the owner of the dominant tenement in the 'physical use or enjoyment of the land possessed by him' ". This is a paraphrase of Restatement, Property, §537: "It [the restrictive covenant] must in some way make the use or enjoyment more satisfactory to his physical senses". We must, therefore, consider whether the net effect of the commercial activity within this neighborhood renders the covenant of no substantial value to petitioners.

There is abundant authority on the effect of changed neighborhood on restrictive covenants, and in each case, the courts have laid great stress on a change in the *predominant character* of the neighborhood: Henry v. Eves, 306 Pa. 250, 159 Atl. 449 (1932) ; Rome v. Rehfuss, supra. It cannot be said that the operation of a very small stenographic service for six months or a seemingly inactive insurance agency in two homes, and the maintenance of a tourist home and a small mink shop has changed the predominant character of an area encompassing 50 residential properties. This is clearly not the same extreme change as is represented in cases such as Snyder v. Plankenhorn, supra, in which plaintiff operated a tourist home and an insurance business in a house which violated the same

building line restriction he sought to enforce in a neighborhood long since transformed from a residential to a commercial district. Petitioner's matter comes clearly within the rule that minor violations will not act to vitiate a covenant. In Kajowski v. Null, 405 Pa. 589, 598, 177 A. 2d 101 (1962), the court said:

"We cannot hold that the failure to object to minor violations of restrictions constitutes such acquiescence as to prevent further enforcement of the covenant where the breaches become substantial and more serious".

In Benner et al. v. Tacony Athletic Association, 328 Pa. 577, 196 Atl. 390 (1938), the court said, at page 581:

"It is only when violations are permitted to such an extent as to indicate that the entire restrictive plan has been abandoned that objection to further violations is barred. Nor will indulgence work a waiver or estoppel against the enforcement of restrictions which are distinct and separate from those previously violated".

It is the rule, therefore, that although the character of a neighborhood is changing, if the community is still primarily a residential one, there remains "substantial value" in the beneficiaries of the covenants to either enforce the covenant or, as in the present matter, to be compensated for its breach: Hunter v. Wood, 277 Pa. 150, 120 Atl. 781 (1923).

The City of Hazleton has argued that petitioners have failed to conform to Pennsylvania Rule of Civil Procedure 1019(a), in that certain material facts on which the cause of action is based are not specifically alleged. We believe that the petition and depositions have furnished respondent with all the material facts necessary in order to prepare its defense to the action. Assuming, arguendo, that there is a defect in the petition, it can be corrected by amendment under Pa.

R. C. P. 1033: Moffat Coal Co. v. A. J. Schrader, Inc., 73 Dauph. 359 (1959).

In our judgment, therefore, the City of Hazleton has acquired a property right vested in petitioners, and whether damages have been sustained is a matter to be determined, and we accordingly enter the following:

ORDER

Now, therefore, March 9, 1964, the rule to dismiss the petition for the appointment of a board of view and to quash the proceedings is discharged.