### DISREGARD OF A BUILDING RESTRICTION.

[Circuit Court of Lucas County.]

FRANCES A. BROWN v. THOMAS F. HUBER AND ROGER HUBER.

Decided, March 2, 1907.

*Building Restrictions—Will not be Enforced by Injunction, When—*
*Change in the Character of the Neighborhood—Discretion of the*
*Court—Remedy at Law—Deed—Covenants Running with the Land*
*and Covenants which are Personal—Character of a Building Re-*
*striction Covenant.*

Building restrictions in a deed, as to property retained by the grantor,
will not be enforced against such property where, after the lapse
of several years, the drift of population has so changed the charac-
ter and surroundings of the property as to make it so inequitable to
enforce the covenant as to prevent its improvement in conformity
to the new conditions.

WILDMAN, J.; HAYNES, J., and PARKER, J., concur.

This is a suit in equity to enjoin the construction and main-
tenance of certain buildings upon property on Ashland avenue
in this city. It seems that on the 14th day of October, 1871,
what is now known as lot No. 3 was deeded by one Scott to Mrs.
Kelley. At that time the title to lot No. 2 was in Scott. In
the deed to Mrs. Kelley there was a covenant providing for a
restriction as to the character of structures thereafter to be
placed by Scott, or his heirs, executors and assigns, on lot No. 2.
In a subsequent conveyance by Scott to one Wood, of lot No. 2,
reference was made by way of recital to the covenant which had
been inserted in the deed to Mrs. Kelley, and the deed to Wood
was made expressly subject to that covenant. The plaintiff,
Mrs. Frances A. Brown, is now the owner of lot No. 3, having
succeeded to the title of Mrs. Kelley, and the defendant, Roger
Huber, has succeeded to the rights of Wood, the purchaser of
lot No. 2. Roger Huber, the owner of lot No. 2 (the other de-
fendant being his agent), has commenced the construction of

certain buildings upon the property owned by him, and is about to construct other buildings, in violation, as claimed by Mrs. Brown, of the covenant made with Mrs. Kelley by Scott in the deed of October 14th, 1871.

Such covenants of restriction as to the character of structures to be placed upon real estate conveyed, and sometimes as to the character of such structures on property retained by the grantor, are not very uncommon, and there has been much adjudication as to the rights of parties to enforce such covenants. While the defendants do not dispute that the one here relied on was inserted in the deed of Scott to Mrs. Kelley, they insist, in the first place, that it was not a covenant running with the land conveyed to Mrs. Kelley or in any other wise made available to her; but that it was a covenant personal to Mrs. Kelley. It is claimed, further, by defendants, that the circumstances surrounding this property have so materially changed in the lapse of years as to make it inequitable so to enforce the covenant as to prevent the improving of lot No. 2 in the manner in which the defendants design to improve it.

I quote the language of the covenant as embodied in the deed of Mr. Scott to Mrs. Kelley:

"And the said B. T. Scott hereby covenants and agrees for himself, his heirs, assigns, executors and administrators, that neither he, his heirs nor assigns, will at any time erect upon lot 2 of said Scott's First Addition to the City of Toledo thereon, any building nearer than 60 feet to the southwesterly line of Adams street, and that the only buildings put upon said lot shall be a residence and the necessary attachments and that it shall be used for no other purposes than that of a family residence, and shall not cost less than $5,000 for the residence alone."

What was known as a part of Adams street at the date of the deed is now Ashland avenue.

The reference to this covenant in the subsequent deed of Mr. Scott to Mr. Wood is in this phraseology:

"Subject, however, to all the conditions as to location of building, etc., contained in the deed from said Scott to Mary I.

Kelley of lot 3 in said addition. And said Scott also hereby makes the same agreement for himself, his heirs, assigns, executors and administrators concerning so much of lot 1 as remains in him after this conveyance, as contained in said last mentioned deed.''

To be a little more explicit, I should have said that Scott was the owner also of lot 1 and that a part of that lot, as well as lot 2, was included in the conveyance to Wood. The covenant with Mrs. Kelley does not, in terms, run to any grantee of hers; but it is insisted by counsel for the plaintiff that Mrs. Brown, the present owner of the premises conveyed by Scott to Mrs. Kelley, is entitled to claim under the covenant, because, in the first place, it pertains to the land and was designed for its benefit; and, secondly, the defendant, Roger Huber, prior to his purchase of the property and the making of the improvements now sought to be enjoined, was fully apprised of the covenant in the deed from Scott to Mrs. Kelley and of the claimed rights of Mrs. Brown.

The view at which we have arrived will not necessitate very much discussion of the question whether the covenant made by Scott either runs with the land or was designed to apply to the land sold by him to Mrs. Kelley. It is insisted by counsel for the defendants that the covenant was made more to gratify Mrs. Kelley—her pleasure and comfort—than that of any person or persons who might subsequently succeed to her rights. Although the covenant does not, in terms, run to her heirs or assigns, it does not differ in that respect from an ordinary covenant of warranty. And perhaps no matter is more thoroughly settled than that the assigns of Mrs. Kelley, under such circumstances, might still bring suit for a breach of warranty. We are disposed, however, to leave this question an open one, as we do not find it necessary to decide it in view of the conclusions at which we have arrived.

The other point urged in behalf of the defendants is, that the conditions affecting the uses which may properly and profitably be made of these several properties, have so substantially changed since October 4th, 1871, as to make it inequitable now

to attempt the enforcement of the covenant, at least to the extent of enjoining the defendants from making the improvements contemplated.

At this point it is proper that I should pause for a moment to consider the character of the improvements planned by the defendants and in process of construction. There has been no breach of that part of the covenant which restricts Scott and those claiming under him from building within sixty feet of Ashland avenue. There has been no breach, as we clearly find from the evidence, of that part of the covenant restricting Scott or those claiming under him from erecting any building of less value than $5,000. The buildings already placed upon the property, by the undisputed evidence, or at least by the very clear weight of the evidence, are each of greater value than $5,000. There was nothing in the covenant prohibiting the erecting of such dwelling as might be placed upon the property ·in such position that the rear of the building should be towards the property sold to Mrs. Kelley, and even against the boundary line between lots 2 and 3; that is, between the property sold to Mrs. Kelley and that retained by Scott. The evidence shows that the two buildings which have been erected upon lot 2 are built so as to front a driveway which has been planned so as to extend into the property now owned by Roger Huber, and that the rear of the buildings towards the Brown property is some ten or fifteen feet from the line. We are not prepared to say whether or not any substantial damage has been done, or will be done to the Brown property by the erection of those structures in the impairment of the market value—the sale value— of that property. It is claimed by the defendants that the potential renting value of both these properties has been and will be enhanced by the sort of improvement which they are placing upon this property; indeed, the defendants claim that the property of the Browns' is enhanced in value rather than depreciated, by the improvements which the defendants are making and have in contemplation. This may still be left as an open question.

The important question in the case is, whether there has been any substantial change in the drift of the population and the

character of the property as to its greater availability and value for use in the manner in which it is proposed to be improved by the defendants, or, whether the character is not so substantially changed. It does not seem to be very much urged by counsel for the plaintiff that there might not be such a complete change in the condition of the property, or the character of its possible uses, as would prevent the equitable application of the power of a court to enjoin such use. To illustrate: if the street upon which this property abuts had become a business street, lined with business blocks, and in which the property had acquired a high value for business purposes, it is hardly claimed by counsel for the plaintiff, if we understand his argument aright, that such a change would not be one affecting the right to insist upon the covenant found in this deed. But it is said that the change in the present instance is not of that character.

Numerous cases were cited by counsel for the plaintiff, many of which were considered, and I think carefully, by Judge Hull in an opinion rendered by him in a case decided by this court in the year 1900, the case of *Russell* v. *Harpel*, 20 Circuit Court Reports, 127. This was a case where, by covenant, the grantor sought to restrict the grantee from making a certain improvement upon property conveyed, and, in that respect, is to be distinguished from the case at bar. Perhaps the conditions in *Russell* v. *Harpel* were rather more favorable to the plaintiff than in the case at bar, because there could be no question there that the covenant was not a personal one, but ran with the land. I read from the syllabus:

"The enforcement of building restrictions in deeds is somewhat a matter of discretion with the courts. If the neighborhood has so changed that a building restriction has become valueless to property owners, equity will not enforce it."

On pages 132, 133, 134 and 135, are references in the opinion to cases decided in New York and Philadelphia and also to the pertinent language of Mr. High in his work on Injunctions. Citing the case of *Trustees, etc.,* v. *Thatcher,* 87 N. Y., 311,

Judge Hull says that it discusses quite fully this question of restrictions of this character, and then quotes from the first paragraph of the syllabus, as follows, page 136:

"While a court of equity has jurisdiction to enforce the observance of covenants made by an owner of lands in a city with an adjoining owner, in consideration of similar reciprocal covenants on the part of the latter, restricting the use of the lands to the purposes of private residences, the exercise of this authority is within its discretion; and where there has been such changes in the character of the neighborhood as to defeat the objects and purposes of the agreement, and to render it inequitable to deprive such owner of the privilege of conforming his property to that character, such relief will not be granted."

He quotes some language also from the opinion of the judge in the case, as follows:

"It certainly is not the doctrine of courts of equity to enforce, by its peculiar mandate, every contract, in all cases, even where specific execution is found to be its legal intention and effect. It gives or withholds such decree according to its discretion, in view of the circumstances of the case, and the plaintiff's prayer for relief is not answered, where, under those circumstances, the relief he seeks would be inequitable."

Judge Hull cites also *Amerman* v. *Dean,* 132 N. Y., 355, and quotes from the syllabus as follows:

"Where the owner of lands in a city has laid it out into lots, which are sold to different purchasers, each conveyance containing covenants on the part of the grantee running with the land restricting the use thereof to the purposes of a private residence, or prohibiting the erection thereon of certain specified structures, while a court of equity has power to enforce the performance of these covenants, the exercise of this authority is within its discretion, and where there has been such a change in the character of the neighborhood as to defeat the objects and purposes of the covenants and to render it inequitable to deprive a grantee or his successors in title to the privilege of conforming his property to that character, such relief will not be granted, and in lieu thereof damages may be allowed."

This case is referred to in the brief of counsel for plaintiff in order, apparently, to suggest that if the plaintiff is not entitled to the relief of injunction, she may be entitled to damages to be awarded by this court, perhaps after reference to a master to ascertain the proper amount. In the case of *Trustees Columbia College* v. *Thatcher, supra,* the New York court dismissed the petition for injunction. In the case of *Amerman* v. *Dean, supra,* which went up to the Court of Appeals on error, the court below had retained the case for the ascertainment of the amount of damages; finding that there had been such a change in the conditions affecting the property as would justify the refusal of an injunction to prevent the contemplated improvement of the property. I have both these cases before me and have examined them. In the case last cited—*Amerman* v. *Dean, supra*—the petition of the plaintiff prayed for an injunction *and* for damages. No such prayer is found in the original petition or in the supplemental petition, in the case at bar; although there is, in addition to the prayer for injunction, one for general, equitable relief. Judge Hull quotes from High on ·Injunctions, Section 22, as follows:

"It is said, 'if it is apparent upon an application for an injunction, that the relief sought is disproportioned to the nature and extent of the injury sustained, or likely to be sustained, the court will decline to interfere.' And, again, at Sec. 1158, 'where the character and condition of the adjoining lands,' with reference to that conveyed, 'have so changed as to render the restriction in the conveyance inapplicable, according to its true intent and spirit, a court of equity will not interfere by injunction to prevent a breach of the covenant, but will leave the party aggrieved to his remedy at law.' "

The case of *Orne* v. *Friedenberg et al,* 143 Pa. St., 487, is also cited, with this quotation:

"Plaintiff filed a bill for a mandatory injunction restraining the maintenance of certain structures upon an adjoining lot, in violation of restrictive conditions imposed on conveyance of defendant's lot in 1825."

And, omitting a part of the language which is not entirely pertinent, Judge Hull proceeds:

"Moreover, there had been such a change of surroundings in the neighborhood, in the character of the improvements, and in the purposes to which they were applied, as might well have been deemed sufficient to justify a chancellor in refusing to restrain the violation of building restrictions such as were complained of.

"The plaintiff might have brought his action at law, or he might, as he did, file his bill for an injunction. While, for the reasons given, he was not entitled to an injunction, he may still sue at law and recover damages, if he can show he has sustained any."

Judge Hull quotes further from High on Injunctions, Section 1158, a part of his quotation being as follows:

"Thus, where the vendor has covenanted in the conveyance not to erect or permit the erection of any buildings on his premises in front of those conveyed, the erection of buildings in violation of the terms of the agreement will be enjoined. Where, however, the title of the feoffor, or those deriving their title under him, have so changed the character and condition of the adjoining lands, with reference to that conveyed, as to render the restriction in the conveyance inapplicable according to its true intent and spirit, a court of equity will not interfere by injunction to prevent a breach of the covenant, but will leave the party aggrieved to his remedy at law."

The action taken by this court in the case of *Russell* v. *Harpel, supra,* was the dismissal of the plaintiff's petition, and no retention of the case for the ascertainment of the amount of claimed damage to the plaintiff.

Now, as I said a little while ago, there was nothing in this covenant to prohibit any one having title to lot No. 2 from erecting a dwelling-house thereon not fronting on Ashland avenue, but with its rear towards the property of Mrs. Brown. None of the buildings, the construction or maintenance of which is sought to be enjoined, come within the restriction as to the value of such building. There is no violation of the covenant as to the distance of the building which is nearest to Ashland

avenue; so that the sole contention of the plaintiff is, substantially, that the defendants are erecting more buildings upon the property than they are entitled to. It is the use of the property farthest removed from Ashland avenue that is sought to be enjoined. There has been no breach of the covenant so far as the first house is concerned, the house nearest to Ashland avenue. The covenant has not been violated, so far as appears, in any respect, unless by the construction of more buildings than one upon the property. We think it sufficiently apparent by the evidence that in the thirty odd years since the deed was made from Scott to Kelley, the conditions for the available use of these properties have substantially changed. True, the property may not have become adaptable at present for business blocks, but we see no distinction in principle between a change from the use of the property for residences only by the families of owners of the properties to that where the property may become very valuable for renting purposes to the occupants of separate domiciles, and a change from the use of property for residence purposes to that for business blocks. The principle is the same, although the extent of the change in the one case may be greater than in the other. It is a matter of degree rather than of kind, and we think it clearly inequitable to restrain the defendant from that kind of a use of his property, which has become profitable to lots generally in the neighborhood by reason of the increase of population, and so deprive the defendant of one of the chief elements of value in the use of the property which he has bought. True, he may have bought it with a knowledge of the existence of the covenant; and, personally, I am inclined to think that he is held to a constructive knowledge conveyed by the recital in the deed from Scott to Wood; but, notwithstanding that fact, the question remains as to whether the true intent and spirit of this contract is to be subserved by holding the property to what may now be an unprofitable use.

It is also a proper inquiry whether the plaintiff would derive any such benefit from the enforcement of the covenant as will justify the court in depriving his neighbor of the large

benefit which may come from the contemplated use of the property. The plaintiff may or may not have been damaged. The lot of the plaintiff may be more or less valuable by reason of the construction of these buildings by the Hubers; but there would seem to be no greater difficulty, if the plaintiff has been damaged by the depreciation of his property, in ascertaining the amount of such damage by an action at law, than there is in very many cases where damages are sought and where verdicts are rendered therefor, although the opinions of witnesses may differ as to the exact extent of such damages. I am not holding or indicating that the plaintiff has been damaged in any substantial way, or has not, but I see no reason why we should depart from the principles enunciated in *Russell* v. *Harpel, supra,* and, entertaining that opinion, following the view of this court which has been undisturbed by any reversal or by any reconsideration of the question and departure from the judgment therein rendered, we are disposed, in the case at bar, to take the same action that was taken by the court in that case. We think that, in view of all the circumstances, the petition of the plaintiff should be dismissed.

*O. S. Brumback,* for plaintiff.

*Marshall & Fraser,* for defendant.