481 A.2d 1207

**DREHER TOWNSHIP BOARD, the Independent Property Owners Association of Sherwood Forest, By Emmanuel T. Sotiridy, Trustee Ad Litem**

v.

**SOLITRON DEVELOPMENT CO., INC.**

Appeal of the **INDEPENDENT PROPERTY OWNERS ASSOCIATION OF SHERWOOD FOREST, By Emmanuel T. SOTIRIDY, Trustee Ad Litem.**

Superior Court of Pennsylvania.

Submitted May 4, 1984.

Filed Aug. 24, 1984.

34

---

John R. O'Brien, Scranton, for appellant.

Timothy B. Fisher, Gouldsboro, for Dreher, appellee.

Robert S. Bennett, Jr., Media, for Solitron, appellee.

Before CIRILLO, DEL SOLE and POPOVICH, JJ.

POPOVICH, Judge:

This is an appeal from an order of the Court of Common Pleas of Wayne County which denied exceptions filed by

appellant, The Independent Property Owners Association of Sherwood Forest (hereafter "Association") to an order dated July 26, 1982, in which the lower court held that lands presently owned by Solitron Development Co., Inc. (hereafter "Solitron") were not subject to a certain Declaration of Protective Covenants. We reverse and remand for resolution of an issue not reached by the lower court.

On March 19, 1982, the Dreher Township Board of Supervisors (hereafter "Board") filed a complaint for a declaratory judgment against Solitron, owner of certain tracts of land in Wayne County which comprise portions of a large vacation home development plan originally proposed in 1972 and commonly known as Sherwood Forest Development. The complaint requested the court to determine the continuing applicability of a declaration of protective covenants which was dated May 1, 1972, and duly recorded in the office of the Recorder of Deeds of Wayne County. The portion of the declaration of protective covenants relevant to the instant case is as follows:

"F. Sewage Disposal. The central sewage disposal system constructed or to be constructed by Declarant, as said system may at any time be improved or otherwise altered, shall be the sole sewage disposal system for the development. *No owner shall install or use any alternative system or method of sewage disposal unless approved by the committee in writing.* All plumbing fixtures, washers, toilets and similar equipment on any Residential Lot shall be connected to the central system through the sewer main now or hereafter installed in the street abutting said Lot. No outside toilets shall be constructed on any Lot." (Emphasis added)

In July of 1981, and thereafter, Solitron presented to the Dreher Township Board of Supervisors, sewage modules for certain tracts requesting the Board to approve them as revisions and supplements to the official sewage plan of Dreher Township. Subsequently, the Board received a report from the Township Sewage Enforcement Official that there was sufficient acreage and sufficient suitable soils to erect or install on-site subsurface sewage disposal systems.

The Township submitted these modules to the Pennsylvania Department of Environmental Resources (hereafter "DER") for its review and comments. In September, 1981, Solitron submitted formal subdivision plans and made application for building permits. The former were conditionally approved, and the building permits were denied. The conditions with respect to the subdivision plans were (1) that Solitron had to obtain approval from DER and (2) a judicial decision indicating that the prohibition against on-site sewage found in the restrictive covenants was inapplicable. The denial of the building permits was based on the grounds that the parcel in question was bound by the restrictive covenant and that until the court made a decision on the applicability of the covenants, no permit would be issued.[1] Since the DER and the Board effectively reserved decision until such time as the applicability of the aforesaid restrictive covenants was judicially decided, three cases arose. The first case was an appeal by Solitron of the conditional subdivision approval. The second action was in the nature of mandamus and involved the denial of the building permit application. In both of the aforementioned actions, the Board was the defendant. The third action, previously described, was for a declaratory judgment. A petition to intervene on behalf of the Sherwood Forest Property Owners Association (hereafter "Association")[2] was granted on April 16, 1982. On June 25, 1982, the lower court ordered the consolidation of the three actions. By order dated July 26, 1982, the lower court found that the lands presently owned by Solitron were not bound by the restrictive covenants of the Sherwood Forest Development Co., Inc. By order dated July 27, 1983, the lower court denied the Association's exceptions to said

1. The conditional approval involved unlotted acreage located in Sherwood Forest Development and known as "Huckleberry Hill Subdivision." The denial involved reserved areas located in Sherwood Forest Development.

2. There is no issue raised as to lack of standing on the part of the Association to enforce the restrictive covenants. *See* PLE Covenants, § 21, *Fey v. Swick*, 308 Pa.Super. 311, 454 A.2d 551 (1982) for a discussion of the right to enforce restrictive covenants imposed to carry out a general scheme of development.

order.[3] The lower court found that the "progress, use, and the orderly development of residential areas should not be arbitrarily impeded by property restrictions which, though justifiable, and sound once created are out of harmony with the present, and inconsistent with the general welfare." (Opinion by Conway, J., 7/26/82 at 3–4) The trial court later elucidated this holding:

"Our decision was not based on a finding that the restrictive covenant prohibiting the use of onsite sewage was not expressly created by the developer. Our decision was not based on a finding that the subsequent purchasers of any lot of the Sherwood Forest Development Lands are not bound by the restrictive covenants for any reasons other than those stated in the paragraph which follows. Our decision was not based on a finding that it was not the clear intent of the developers that all parcels of Sherwood Forest would be bound by the restrictive covenants, and that any subsequent purchasers would be prohibited from installing its own sewage facility." (Opinion, Conway P.J., 7/27/83 p. 8)

Throughout the proceeding, intervenors have contended that since the average size of a lot is less than one-third of an acre, the success of the development hinges to a great extent upon the existence of one central sewage system. Because of the considerable expense involved in constructing such a system, the only way to provide a central sewage system is by a restrictive covenant that requires all land to

**3.** The lower court held that the Association's Exceptions were timely filed because notice of the lower court's decision was never served upon them. Solitron contends that it had constructive notice. *Citing Gibson v. Miller,* 265 Pa.Super. 597, 402 A.2d 1033 (1979), the lower court held that there is no exception which allows actual or constructive notice from a source other than the Prothonotary to begin the running of the 10-day period for filing exceptions. Rule 1519 provides that if no exceptions are filed within the 10-day period, a decree *nisi* shall be entered on praecipe as the final decree and that notice of that decree shall be given to each party. "The fact that the Plaintiff-Intervenors never received notice of the entering of a final decree would have further led them to believe the ten (10) day period for the filing of exceptions had not yet begun to run." (Opinion, Conway, J., July 28, 1983). Moreover, a court may grant leave to file exceptions nunc pro tunc.

be so served. The Association and its members alleged that they are presently involved in litigation concerning the Sherwood Forest escrow account and the funds which were set aside for the development of the Sherwood Forest Development and fully intend to develop said plan in the manner originally intended by the developer. To hold that the restrictive covenants are inapplicable would be to undermine the development of the central sewage system and concomitantly undermine the development of the entire plan. Solitron contends that the Court of Common Pleas held correctly and submits that the only way the 300 to 400 landowners can make any meaningful and immediate use of their land is to allow on-site sewage disposal as long as the sewage system is approved by the Pennsylvania Department of Environmental Resources and as long as the landowner complies with all applicable local ordinances.[4] We reverse.

This appeal presents us with an oft-litigated problem in a novel context. The question of whether changed circumstances have arisen thereby negating the usefulness of a restrictive covenant usually arises where there is a covenant related to the use of the land. The covenant may restrict the use of a particular plan or lot to residential use. In ensuing years, a major highway is built, the developer has implicitly consented to some commercial uses, or the land becomes wholly unfit for residential use, and the court will hold that "the changed character of the area should stay the hand of equity." *Snyder v. Plankenhorn,* 398 Pa. 540, 159 A.2d 209 (1960). The lower court used similar and consistent reasoning to apply a "changed character" theory to the situation where a developer "goes under", money is not available for a central sewage system, and a party desires to develop land.

 "Restrictions on the use of land are not favored by the law because they are an interference with an owner's free and full enjoyment of his property. (Cites omitted) Therefore, they are to be strictly construed." *Burns v.*

4. Presently there is no central sewage system, and no developer in existence.

*Baumgardner,* 303 Pa.Super. 85, 91, 449 A.2d 590, 592–593 (1982). *Morean v. Duca,* 287 Pa.Super. 472, 430 A.2d 988 (1981). "Indeed, every doubt is to be resolved against the existence of restrictions and in favor of a free and unrestricted use of property by its owner." *Burns v. Baumgardner, supra,* 303 Pa.Superior Ct. 91, 449 A.2d at 593. We are further mindful that covenants restricting the use of land are construed most strictly against one claiming their benefit and in favor of the free and unrestricted use of property. *Sczepaniak v. McGlone,* 163 Pa.Super. 11, 60 A.2d 382 (1948). "To ascertain the intention of the parties, the language of a deed should be interpreted in light of the subject matter, *the apparent object or purpose of the parties* and the conditions existing when it was executed." (Emphasis added) *Baederwood, Inc. v. Moyer,* 370 Pa. 35, 40–41, 87 A.2d 246, 248 (1952). *Snyder v. Plankenhorn, supra.* Cases are legion wherein courts have held that the character of a neighborhood has changed thereby negating the usefulness of the restrictive covenant.

> "Where the exigencies of altered conditions in a neighborhood render a strict adherence to the terms of the restrictive covenant useless to the dominant tenement, or absurd, or futile, or ineffective to achieve the end desired, it would be an anachronism to interpose equitable relief in favor of it."

*Daniels v. Notor,* 389 Pa. 510, 515, 133 A.2d 520, 523 (1957) quoting fr. *Henry v. Eves,* 306 Pa. 250, 260, 159 A. 857, 860. "Equity does not enforce such a restriction if the nature of the neighborhood changes has been such as to make it impossible to accomplish the objects for which it was designed, even though such changes may have resulted from circumstances over which neither of the parties had any control. It being a general policy of the law that land shall not be burdened with permanent or long continued restrictions which have ceased to be of any advantage, equity will not, in such cases, prohibit or retard improvements simply to enforce the literal observance of a condition or covenant." *Daniels v. Notor, supra,* 389 Pa. 518, 133 A.2d at 524–525.

The above jurisprudence is firmly entrenched. However, notwithstanding any change in character or use of land, "equity will restrain a violation of a building restriction if its enforcement remains of *substantial* value to the dominant tenement", *Daniels v. Notor, supra*, 389 Pa. 519, 133 A.2d 525. *See also Peters v. Davis*, 426 Pa. 231, 231 A.2d 748 (1967), *Rome v. Rehfuss*, 391 Pa. 82, 137 A.2d 233 (1958). Here, the covenants were expressly created by the developer, clearly intended to apply to all subsequent purchasers of lots within the development, and clearly intended to prohibit any future buyer from installing an on-site sewage module. Just as Solitron contends that the covenant will restrict it from developing its land, the Association contends that allowing Solitron to construct an on-site sewage system will undermine its plans and make it financially burdensome to construct a central sewage system, which it considers mandatory if further development is to be realistic.

In order to effect the discharge of the covenants, the burden of proof is on the owners of the servient tenements to show that the original purpose and intent of the restrictions "have been materially altered or destroyed" by "changed conditions" and that "substantial benefit and advantage may not inure to the owners of the dominant tenement by the enforcement of the restrictions." *Rieck v. Virginia Manor Co.*, 251 Pa.Super. 59, 64–65, 380 A.2d 375, 378 (1977).

Equity will deny relief to a party seeking enforcement of a restrictive covenant "if the harm done by granting the injunction will be disproportionate to the benefit secured thereby." Restatement of Property, § 563 (1944). Solitron does not persuasively assert that its hardship would be far greater than the benefit afforded the Association by the restriction. *See Katzman v. Anderson*, 359 Pa. 280, 59 A.2d 85 (1948).

The findings of the chancellor may be disturbed where the record affords them inadequate evidentiary sup-

port or when they have been premised upon erroneous inferences and deductions drawn by the chancellor from the evidence. *Peters v. Davis, supra.*

Accordingly, we hold that the restrictive covenants have retained their validity and should control. There has been no "substantial change in circumstances". *Price v. Anderson,* 358 Pa. 209, 56 A.2d 215 (1948).

Solitron argues that should this court determine that the declaration of protective covenants applies, then it should apply only to those areas which were subdivided into lots, not to the unlotted portions nor to those areas retained by the developer. It notes that the declaration states "No owner shall install or use any alternative system or method of sewage disposal *unless approved by the committee in writing* " and argues that this implies that the developer anticipated alternate sewage disposal systems. Since some land was lotted and other land remained either unlotted or "retained by the developer", Solitron argues that the developer intended to withhold parts from the strictures of the Declaration of Protective Covenants. Since the lower court did not reach the issue of whether all lands owned by Solitron are subject to the Declaration of Protective Covenants, we remand for a decision on this issue.

Jurisdiction relinquished.