J-A12030-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| SHARON BELTZ | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ETHICON WOMEN'S HEALTH AND | : | |
| UROLOGY, ETHICON, INC., | : | |
| JOHNSON & JOHNSON, GYNECARE; | : | No. 2138 EDA 2017 |
| SECANT MEDICAL; SECANT | : | |
| MEDICAL, INC.; PRODESCO, INC.; | : | |
| AND SECANT MEDICAL LLC | : | |
| | : | |
| | : | |
| APPEAL OF: ETHICON, INC. AND | : | |
| JOHNSON & JOHNSON | : | |

Appeal from the Judgment Entered June 23, 2017
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s):  June Term, 2013 No. 3835

BEFORE:  BOWES, J., OTT, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY OTT, J.:                    **FILED DECEMBER 21, 2018**

Ethicon, Inc. and Johnson & Johnson ("Defendants") appeal from the June 23, 2017, judgment entered in Philadelphia County Court of Common Pleas, in the amount of $2,430,000.00 in favor of Sharon Beltz pursuant to the jury verdict entered on May 26, 2017, as molded by the trial court's June 21, 2017, order allowing delay damages.  Defendants now raise the following claims:  (1) whether the trial court erred and/or abused its discretion when it struck as untimely Defendants' post-trial motions that were filed 17 days after the verdict was read in open court but ten days after the clerk entered the verdict on the docket; (2) the court erred and/or abused its discretion in failing

to determine the motion to strike in light of Pa.R.C.P. 126, given the absence of legally cognizable prejudice to Beltz and the fact that if there is any "fault" of Defendants, it is only that they relied on a prominent Pennsylvania treatise and case law for the date on which the 10-day period began; and (3) whether the court erred in permitting a strict liability claim to proceed to verdict when Pennsylvania law requires plaintiffs bringing design defect claims for prescription-only medical devices to establish negligence. Defendants' Brief at 3. Based on the following, we affirm.

The trial court set forth the procedural history and facts as follows:

I. Procedural History

On June 28, 2013, the Plaintiff Sharon Beltz commenced this action by filing a complaint against Ethicon, Inc. as well as numerous other defendants. On October 9, 2014, in response to a case management order, [Beltz] filed a short-form complaint clarifying that their [sic] action was against Ethicon Inc., Johnson and Johnson, Secant Medical, Inc., Secant Medical, LLC, and Prodesco, Inc. The complaint arises from the implantation of a Prolift, a transvaginal mesh product, which was surgically implanted in Ms. Beltz on September 20, 2006.

The complaint brought numerous claims based in Pennsylvania law. Ultimately, the jury determined that the benefits of the Prolift did not outweigh the risk of harm associated with its design.[1] On May 26, 2017, after a two-week trial, the jury awarded Ms. Beltz $2,160,000[.00] in compensatory

_____

[1] The jury found in favor of Beltz solely on her strict liability design-defect claim. The jury found in favor of Defendants on Beltz's claims alleging negligent failure-to-warn, strict liability failure-to-warn, negligent design-defect, and strict liability failure-to-warn under a consumer-expectation theory.

damages.[2]  The verdict was recorded on May 26, 2017.  [The verdict was subsequently timestamped and docketed on May 31, 2017.[3]]

On June 12, 2017[,] Defendants filed a motion for post-trial relief.  On June 14, 2017 [Beltz] filed a motion to strike Defendants' post-trial motion, alleging that Defendants' motion was untimely, in violation of the ten-day filing deadline for post-trial relief required by Pa.R.C.P. No. 227.1(c)(1).  [Beltz's] motion to strike also alleged that the correct filing date was June 5, 2017.  On June 19, 2017, this Court heard oral arguments from both parties on the issue of Defendants' untimely post-trial motion.  This Court held an additional hearing on June 20, 2017, permitting the Plaintiff, Ms. Beltz, to testify about the prejudice that would be visited upon her if [Defendants'] untimely post-trial motion was not dismissed.  On June 20, 2017, this Court granted [Beltz's] motion to strike [Defendants'] post-trial motion.  [Three days later, the court, upon *praecipe*, entered judgement in favor of Beltz, and against Defendants, in the amount of $2,430,000.00, which reflected the jury award and delay damages.  On June 28, 2017, the trial court ordered Defendants to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).  Defendants filed a concise statement on July 13, 2017.  The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on October 17, 2017].

II.  Facts

On June 19, 2017, this Court heard arguments from the parties concerning [Defendants'] post-trial motion filed on June 12, 2017.  [Defendants] admitted that the deadline to file a post-trial motion in this litigation was June 5, 2017, and their post-trial motion was filed untimely, on June 12, 2017, one week after the ten-day deadline mandated by Rule 227.1(c)(1).  [Defendants] submit that the untimeliness was due to reliance on a secondary source, *10 Standard Pennsylvania Practice § 61:10*, and claim that it misapprehended the start of the period to file as being when the

---

[2]  The jury declined to award punitive damages.

[3]  That same day, Beltz filed a motion for delay damages pursuant to Pa.R.C.P. 238 in the amount of $270,000.00.  Defendants filed an answer on June 20, 2017.  One day later, the court granted Beltz's motion.

verdict was entered into the docket, as opposed to when the verdict is announced and recorded in open court. [Defendants] then implored this Court to accept the untimely filing in light of Pa.R.C.P. No. 126 because their mistake was inadvertent; they made a good faith effort to comply with the rules; and have demonstrated a track record of timely post-trial filings in previous mass-tort litigation, and, ultimately, that accepting the late filing would not substantially prejudice [Beltz]'s rights.

[Beltz] argued that the Rules of Civil Procedure are black letter rules, the violation of which is not acceptable. [Beltz's] counsel then argued that the rights of Ms. Beltz would be substantially prejudiced if this Court accepted the untimely filing. The Plaintiff, Ms. Beltz, also testified at a subsequent hearing on June 20, 2017. Ms. Beltz discussed the trial and the humiliation she felt during the extensive testimony about her medical issues. Ms. Beltz also testified about the relief she felt when her attorneys contacted her a few days after the June 5, 2017 filing deadline to tell her that Defendants did not submit a post-trial motion. Ms. Beltz believed that her legal journey was finally over and even had a preliminary discussion with her attorneys about investment opportunities for her jury award.

Trial Court Opinion, 10/17/2017, at 1-3 (record citations omitted; emphasis removed).

Based on the nature of their claims, we address Defendants' first two arguments together. Overall, Defendants contend the trial court erred in granting Beltz's motion to strike their post-trial motions as untimely filed. *See* Defendants' Brief at 17 (footnote omitted). In support of this general argument, Defendants assert:

Applying both Rule 227.1(c)(1) and Pa.R.C.P. No. 126 together, the Superior Court has held that while a "late filing [is] surely a transgression of the Rules, not all transgressions are equal and, therefore, sanctions such as waiver should be reserved for those instances in which indulgence of a late filing actually works to prejudice the interests of the adverse party or the orderly administration of justice. The Rules recognize this distinction, and

- 4 -

thereby permit a court to mete out the proper punishments accordingly."

Defendants' Brief at 18, *quoting* **Carlos R. Leffler, Inc. v. Hutter**, 696 A.2d 157, 166 (Pa. Super. 1997).

> Whenever a party files post-trial motions at a time when the court has jurisdiction over the matter but outside the ten-day requirement of Pa.R.C.P. 227.1, the trial court's decision to consider the motions should not be subject to review unless the opposing party objects. **Millard v. Nagle**, 402 Pa. Super. 376, 587 A.2d 10, 12 (Pa. Super. 1991), **affirmed** 533 Pa. 410, 625 A.2d 641 (1993). As stated in **Carlos R. Leffler, Inc. v. Hutter**, 696 A.2d 157, 166 (Pa. Super. 1997), "in situations in which a party files post-trial motions out of time and a specific objection is made thereto by the opposing party, **the trial court, in deciding whether to rule upon the merits of the motion, must consider the nature of the derelict party's default as well as the resulting prejudice to the objecting party**." (citations omitted).

**Mammoccio v. 1818 Mkt. Pshp.**, 734 A.2d 23, 27 (Pa. Super. 1999) (emphasis added), *appeal granted, case remanded*, 744 A.2d 265 (Pa. 2000).

With respect to the first prong, the derelict party's default, Defendants argue they "attempted to comply with the 10-day deadline but relied on a respected practice manual," 10 *Standard Pennsylvania Practice* 2d § 61:10 (2017), "to determine the date on which the 10-day began to run." Defendants' Brief at 20. Standard Pennsylvania Practice states, in pertinent part:

> Posttrial motions must be filed within 10 days after the verdict, discharge of the jury because of inability to agree, or nonsuit in the case of a jury trial, or notice of nonsuit or the filing of the decision in the case of a trial without jury. An untimely posttrial motion waives appellate arguments where the trial court refuses

to address the merits of the issues raised in the adverse possessor's motion.

The 10-day period for filing posttrial motions begins running when the order of the court is entered on the docket, thus placing it on the record, and not when the order is announced by the court. During this 10-day period, the verdict is not evidence of anything, being subject to the control of the court and liable to be set aside. Where the 10th day after the verdict is a Saturday, the motion is timely if filed on the following Monday.

10 Standard Pennsylvania Practice 2d § 61:10.

Defendants acknowledge the trial court refused to credit the treatise

pursuant to **Mammoccio**, **supra**. **See** Defendants' Brief at 23. They state:

In any event, the attorneys here filed what they thought were timely post-trial motions, but, under **Mammoccio**, the filing was late. Unlike most such cases, however, this was not a case in which a party simply ignored the existence of a deadline and had no basis for asking for fault to be excused. **See**, **e.g.**, **D.L. Forrey & Assocs., Inc. v. Fuel City Truck Stop, Inc.**, 71 A.3d 915, 920 (Pa. Super. 2013) (distinguishing **Millard** and other cases because appellant never filed post–trial motions); **Hines v. Se. Pa. Transp. Auth.**, 607 A.2d 301, 304 (Pa. Cmwlth. 1992) (filing demand for jury trial not substantial compliance where notice of appeal was required, because "appellant simply didn't comply" and "never perfected an appeal").

…

Defendants did not "disregard[] the terms of a rule in their entirety and determin[e] for [them]sel[ves] the steps [they] can take to satisfy the procedure that [courts] have adopted to enhance the functioning of the trial courts." [**Womer v. Hilliker**, 908 A.2d 269, 271 (Pa. 2006)]. Instead, Defendants intended to be and thought that they were in compliance with the terms of Rule 227.1(c)(1) by relying on *Pennsylvania Standard Practice* to determine the trigger date for the 10-day deadline for motions for post-trial relief. Indeed, it was because they believed the motions were timely filed that they did not file a motion for its acceptance *nunc pro tunc*. The first notice of untimeliness to Defendants was through Plaintiff's motion to strike.

*Id.* at 23-25.

We are guided by the following. Post-trial motions are governed by Pa.R.C.P. 227.1, which states, in pertinent part:

**(c)** Post-trial motions shall be filed within ten days after

**(1)** verdict, discharge of the jury because of inability to agree, or nonsuit in the case of a jury trial[.]

Pa. R.C.P. 227.1(c)(1). Moreover,

[t]he trial court has broad discretion to dismiss an untimely posttrial motion or to overlook its untimeliness. ***See Kennel v. Thomas***, 804 A.2d 667, 668–69 (Pa.Super.2002); *cf.* ***Baker v. Scranton Aluminum Mfg. Co.***, 242 Pa. Super. 488, 364 A.2d 377, 378 (1976) (affirming dismissal for untimeliness under local four-day rule for the filing of motion for new trial).

***Ferguson v. Morton***, 84 A.3d 715, 718 n.4 (Pa. Super. 2013).

In ***Mammoccio***, ***supra***, this Court opined: "Pa.R.C.P. 227.1(c)(1) **does not expressly require entry of the verdict upon the docket before the ten-day period begins to run**, and we will not judicially amend the rule to include such a requirement." ***Mammoccio***, 734 A.2d at 26 (emphasis added).[4] ***Cf. Brednick v. Marino***, 644 A.2d 199 (Pa. Super. 1994) (stating

---

[4] As indicated above, the Pennsylvania Supreme Court granted allocatur in ***Mammoccio***, and, as a result, the Supreme Court remanded the case to the trial court, issuing the following order:

AND NOW, this 13th day of January 2000, the petition for allowance of appeal is **GRANTED** and the case is **REMANDED** to the Court of Common Pleas of Philadelphia County to rule on the petitioners' post-trial motions for remittitur and to rule on the

when verdict not announced in open court, period for filing post-trial motions is ten days from mailing of notice of verdict to parties); Pa.R.C.P. 227.1(c)(2).

With respect to Rule 126, it provides:

> The rules shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable. The court at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties.

Pa.R.C.P. 126.

A panel of this Court previously explained the interaction of Rule 126 with the remaining rules of civil procedure:

> It is self-evident that our Rules of Civil Procedure are essential to the orderly administration and efficient functioning of the courts. Accordingly, we expect that litigants will adhere to procedural rules as they are written, and take a dim view of litigants who flout them. *See Wood v. Ganett*, 353 Pa. 631, 46 A.2d 321, 324 (Pa. 1946). That said, we have always understood that procedural rules are not ends in themselves, and that the rigid application of our rules does not always serve the interests of fairness and justice. *Pomerantz v. Goldstein*, 479 Pa. 175, 387 A.2d 1280, 1281 (Pa. 1978). It is for this reason that we adopted Rule 126, which provides in pertinent part that "[t]he court at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties." Pa.R.C.P. No. 126. With this language, we incorporated equitable considerations in the form of a doctrine of substantial compliance into Rule 126, giving the trial courts the latitude to overlook any "*procedural* defect" that does not prejudice a party's rights. *Sahutsky v. H.H. Knoebel Sons*, 566 Pa. 593, 782 A.2d

---

issues concerning evidentiary rulings and the allegedly prejudicial remarks.

*Mammoccio v. 1818 Mkt. Pshp.*, 744 A.2d 265 (Pa. 2000). Nevertheless, the Supreme Court's order did not affect this Court's reasoning in the matter.

- 8 -

996, 1001 (Pa. 2001) (*quoting **Kurtas v. Kurtas***, 521 Pa. 105, 555 A.2d 804, 806 (Pa. 1989) (emphasis in original)); ***Pomerantz***, 387 A.2d at 1281. Thus, while we look for full compliance with the terms of our rules, we provide a limited exception under Rule 126 to those who commit a misstep when attempting to do what any particular rule requires. Moreover, we made Rule 126 a rule of universal application, such that the trial court may disregard any such procedural defect or error at every stage of any action or proceeding to which the civil procedural rules apply. ***See id.***

***Womer***, 908 A.2d at 276.

Here, the trial court found the following:

During the hearing held by this Court on June 19, 2017, regarding [Beltz]'s motion to strike, [Defendants'] post-trial motion, [Defendants] admitted to filing an untimely post-trial motion.

"Pursuant to the applicable rule that a post-trial motion was to be filed ten days later. It was a week late, no question about that." N.T. 6/19/17 pp. 10.

[Defendants] point out correctly in their first point of error that post-trial motions are a procedural mechanism to ensure that a trial court reviews allegations of error in the first instance. When they are filed on time, that's how they function. However, when they are untimely, as they were in this case by 7 days, a trial court must then consider the consequences of accepting or disregarding them.

[Defendants] seem to characterize their infraction of Rule 227.1(c)(1) as an innocuous misadventure that does not prejudice the substantive rights of [Beltz], requiring the benevolent posture of Rule 126 to act as a legal *deus ex machina*, rescuing their untimely post–trial motion from peril. This court disagrees and finds that [Beltz]'s substantial rights would be affected if it accepted [Defendants'] untimely post-trial motion. However, even if it is determined that the infraction is *de minimis*, as [Defendants] seem to suggest, then this is the exact type of infraction that Rule 126 permits a trial court to either disregard or accept.

This Court comprehends Rule 126 and its applicability to the issue of whether or not to grant [Beltz]'s motion to strike due to Defendant[s'] violation of Rule 227.1(c)(1). N.T. 6/19/17 pp. 10. The basic purpose of Rule 126 is straightforward and if this Court accepted [Defendants'] untimely post-trial motion that purpose cannot be achieved. First, reopening this case, filed in 2013 and decided by a jury in 2017, would not promote a "speedy and inexpensive determination of every action or proceeding." Second, the substantial rights of Ms. Beltz would be affected if this Court accepted [Defendants'] untimely post-trial motion. After consideration of the policy justifications for Rule 126, the discretion that Rule 126 allows, and the cases described *supra*, this Court granted [Beltz]'s motion to strike [Defendants'] untimely post-trial motion. This claim of error is meritless.

…

As was stated *supra*, [Defendants] declared that their post-trial motion was untimely due to reliance on a secondary source, *10 Standard Pennsylvania Practice §61:10*. This source advises its readers that the ten-day filing deadline for post-trial motions begins when the verdict is entered into the docket, as opposed to when the verdict is announced in open court. Despite their carelessness, [Defendants] provided testimony demonstrating their knowledge of the proper way to follow [R]ule 227.1(c)(1).

"And so, this is not a case where the defendants opted, as has been suggested, to use a different calculus. There was a mistake. It was … a mistake. There's no question that the trigger is the reading of the verdict in open court." N.T. 6/19/17 pp. 10.

This Court rejects [Defendants'] explanation for the following reasons. *10 Standard Pennsylvania Practice* is a secondary source. As their testimony demonstrates, [Defendants] were clearly aware that the time to file a post-trial motion begins when the verdict is read in open court. They also knew that the Pennsylvania Rules of Procedure and a thorough analysis of the case-law interpreting Rule 227.1(c)(1) should have guided their post–trial strategy. Moreover, the legal notices contained at the very beginning of the hard-copy and electronic versions of 10 *Standard Pennsylvania Practice 2d* caution the readers who rely on them for information:[4]

_____

- 10 -

[4] The legal notice contained within the hard-copy version of 10 *Standard Pennsylvania Practice 2d* is located on the second page right before the table of contents. The electronic legal notice is accessible in the table of contents by clicking the [i] icon.

_____

"This publication was created to provide you with accurate and authoritative information concerning the subject matter covered; **however, this publication was not necessarily prepared by persons licensed to practice law in a particular jurisdiction. The publisher is not engaged in rendering legal or other professional advice and this publication is not a substitute for the advice of an attorney.** If you require legal or other expert advice, you should seek the services of a competent attorney or other professional." *10 Standard Pennsylvania Practice 2d hard-copy legal notice pp. ii*[.]

"Thomson Reuters is not providing legal advice by providing this product. The information contained herein is not a substitute for the advice of an attorney. If you require legal or other expert advice, you should seek the services of a competent attorney or other professional." *Table of contents; Standard Pennsylvania Practice 2d electronic legal notice.*

This source clearly warns the reader that some of the information contained within may not necessarily be drafted by licensed attorneys. How could [the law firm for Defendants], one of the most elite law firms in the country, not know when the deadline to file post-trial begins, and then rely exclusively on a source which warns them not to? Therefore, this court does not accept [Defendants'] explanation for the late filing, especially when the black letter Pennsylvania Rules of Civil Procedure and the cases interpreting those rules, are readily available to every practicing attorney for review. Furthermore, [Defendants] did not introduce any evidence of an attempt on their behalf to mitigate the impact of their untimely filing, during the extra week they took to draft their post-trial motion. Seven days late is considerably

more than one day and, this court is not obligated to accept this untimely filing. This allegation of error is meritless.

Trial Court Opinion, 10/17/2017, at 6-7, 11-12 (emphasis in original; footnote omitted).

We agree with the trial court's well-reasoned analysis. While we acknowledge Defendants' reference to *Standard Pennsylvania Practice* may have provided some guidance in their research on the issue, we point out that the secondary source relies on ***Papalia v. Montour Auto Service Co.***, 682 A.2d 343 (Pa. Super. 1996), for the proposition that the 10-day period for filing post-trial motions begins to run when the order of the court is entered on the docket. ***See*** 10 Standard Pennsylvania Practice 2d § 61:10 n.4. ***Papalia***, however, concerns the untimely filing of post-trial motions from notice of a nonsuit. ***Papalia***, 682 A.2d at 345. ***Mammoccio***, ***supra***, recognized there is a distinction in Rule 227.1 with respect to nonsuits and jury verdicts entered in open court before the parties, explaining:

> In ***Papalia***, 682 A.2d at 345, this court cited to Pa.R.C.P. 227.1(c)(1) in making its decision. We are convinced that said citation was a typographical error since that section only applies to "a nonsuit in the case of a jury trial [,]" and in that case, the nonsuit was granted before trial, pursuant to Pa.R.C.P. 218, due to the plaintiffs refusal to proceed. Rather, we believe the ***Papalia*** court actually applied Pa.R.C.P. 227.1(c)(2) which provides that "Post Trial motions shall be filed within ten days after ... (2) notice of nonsuit or the filing of the decision or adjudication in the case of a trial without a jury or equity trial." Thus, the ten-day period could not begin to run until the nonsuit order was docketed and notice was served pursuant to Pa.R.C.P. 236, and the Papalias' post-trial motion was timely filed within ten days from the entry of the order on the docket. ***Cf., McCormick v. Blue Cross of Western Pa.***, 360 Pa.Super. 210, 520 A.2d 59 (1987) (where

compulsory nonsuit was entered in non-jury trial at the close of plaintiffs' case, ten-day period for filing post-trial motions did not begin to run until the order granting the nonsuit was entered on the docket and notice was sent).

Even if we are incorrect in our assumption that **Papalia**, **supra**, was actually decided based upon the application of Pa.R.C.P. 227.1(c)(2), we are still convinced **Papalia**, **supra**, is distinguishable from the present case since we are not dealing with a nonsuit but, rather, entry of a jury verdict in open court. The date upon which the ten-day period for filing post-trial motions begins to run differs between sections (c)(1) and (c)(2) of Rule 227.1, because of the possibility that the parties do not know that a decision (or nonsuit) has been rendered and the ten-day period has begun to run. **See** Pa.R.C.P. 1038 (Trial court, sitting without a jury, shall render his decision within seven days after the conclusion of the trial, except in protracted or extraordinarily complicated cases.).

When, as in the present case, the jury's verdict is announced in open court at the conclusion of the trial, all parties are present and are placed on notice of the verdict. This situation is distinct from that covered by Pa.R.C.R. 227.1(c)(2), where the trial court's decision or order granting a nonsuit may be rendered outside of the parties' presence. Thus, entry of the order on the docket and service of notice on the parties is necessary to insure that the litigants know of the court's decision and have time to prepare a post-trial motion before the expiration of the ten-day period. **See**, *e.g.,* **Carr v. Downing**, 388 Pa.Super. 195, 565 A.2d 181, 181–82 (1989), *allocatur denied*, 527 Pa. 628, 592 A.2d 1296 (1990) (Ten-day period for filing post-trial motions did not begin to run until the adjudication and decree nisi were filed on the record and the prothonotary served notice of the decision.); **Brednick v. Marino**, 434 Pa.Super. 513, 644 A.2d 199, 200 (1994) (same).

**Mammoccio**, 734 A.2d at 26–27.

As such, the Rule and related case law are clear and straightforward regarding the timing for filing a post-trial motion following a jury verdict. Defendants should have referred to the Rule and distinguishing case law when developing their post–trial strategy, rather than merely relying on a secondary

J-A12030-18

source. Furthermore, Defendants, by their own admission at the June 19, 2017, proceeding, were well-aware that their post-trial motions were tardy. **See** N.T., 6/19/2017, at 10. Lastly, Defendants should have taken notice that Standard Pennsylvania Practice is not controlling authority based on the legal notices at the beginning of the hard and electronic copies. Therefore, Defendants' excuse that they were the "quintessential parties"[5] who just committed a misstep and the trial court applied a "hard-and-fast"[6] rule based on the fact that they filed the motion a mere seven days late is disingenuous and not persuasive. Accordingly, we find the trial court clearly considered the nature of Defendants' default, and its explanation for not applying Rule 126 did not represent an abuse of discretion.[7]

Next, Defendants argue the court "committed an error of law when it credited subjective reactions of [Beltz] as prejudice." Defendants' Brief at 25. They state the "seven-day delay here did not prejudice [Beltz] in any objective sense and did not impact her substantial rights"[8] based on the following:

> [Beltz] did not supply "specific facts," … that a witness would be unavailable if a new trial were granted or that recollections had faded over the seven days. Nor did [Beltz] alter her financial situation on the expectation of payment in the seven days before

---

[5] Defendants' Brief at 20.

[6] *Id.*

[7] *Wellons v. Metropolitan Life Insurance Co.,* 444 A.2d 173 (Pa. Super. 1982) (affirming the trial court's refusal to consider post-trial exceptions filed four days late due to inadvertence of counsel).
[8] *Id.* at 26.

- 14 -

the post-trial motions were filed. The trial court relied solely on [Beltz]'s testimony of shifting emotions as the basis for its prejudice finding. Under the standards in Pennsylvania cases, [Beltz]'s testimony did not demonstrate objective prejudice and could not sustain a decision to strike the post-trial motions.

*Id.* at 26-27 (citation omitted). Moreover, Defendants claim Beltz's contention that the loss of finality itself constituted prejudice was unavailing. *Id.* at 27.

As noted above, "in situations in which a party files post-trial motions out of time and a specific objection is made thereto by the opposing party, the trial court, in deciding whether to rule upon the merits of the motion, must consider the nature of the derelict party's default as well as **the resulting prejudice to the objecting party**." *Leffler*, 696 A.2d at 166. In *Leffler*, which deals with a nonsuit, the appellant-plaintiff filed his post-trial motion one day late due to inclement weather, but the trial court declined to address the motion declaring it untimely. A panel of this Court found that the trial court abused its discretion in concluding the appellant-plaintiff's filing tardy, stating "[a]side from the mere fact of the tardy filing itself, we fail to see how [appellant's] lateness upset effective court procedure or prejudiced the adverse parties." *Id.* at 166 (footnote omitted). The panel continued:

> While this late filing was surely a transgression of the Rules, not all transgressions are equal and, therefore, sanctions such as waiver should be reserved for those instances in which indulgence of a late filing actually works to prejudice the interests of the adverse party or the orderly administration of justice. The Rules recognize this distinction, and thereby permit a court to mete out the proper punishments accordingly.

- 15 -

*Id.*[9]

Here, the trial court found the following:

This Court held hearings on June 19 - 20 enabling the parties to present arguments concerning the nature of [Defendants'] fault, and testimony from Ms. Beltz about the prejudice that would befall her if [Defendants'] untimely post-trial motion were accepted.

[Defendants] argue that no prejudice would befall Ms. Beltz if this Court accepted their untimely post-trial motion. **Pennsylvania law does not define the prejudice required by *Leffler*.** Nevertheless, this Court disagreed with [Defendants], and found that prejudice would have befallen Ms. Beltz if this Court overlooked the untimeliness of [Defendants'] post-trial motion 7 days after the deadline.

During the June 20, 2017 hearing, Ms. Beltz testified about how she will be prejudiced if [Defendants'] untimely post-trial motion were accepted. After the jury verdict on May 26, 2017, her attorneys advised her about how the post-trial process works and she was told that [Defendants] had ten days to file their post-trial motions. N.T. 6/20/17 pp. 23. The next time Ms. Beltz spoke to her legal counsel was on Wednesday June 7, 2017, 2 days after [Defendants'] deadline to file post-trial motions. N.T. 6/20/17 pp. 23. Ms. Beltz discussed the substance of that conversation:

"When Kila ([Beltz's] Attorney) called she expressed to me that they did not file an appeal. She said that it was over and she continued to talk about [sic]. It seemed silly, but by the end of the conversation she actually was offering to give us recommendations, like financial recommendations because that's how final it was, that's how it was over. And one of the last things I said to her was, So this is it, like they had their time? They didn't file anything, it's over? And you said, yes, it's over." N.T. 6/20/17 pp. 25.

Afterwards, Ms. Beltz discussed the relief she felt, believing that her legal journey was over:

---

[9] Also in *Leffler*, there was no allegation of prejudice to the adverse party.

"And then I called my husband immediately after that call (from Ms. Baldwin) and I told him, I said, it's over. I was crying. I'm like, it's over. We can put this behind us. We can move on. And then, when he came home that night he hugged me and said, he said, it seems inappropriate, but he said he was happy for me because he knows what I go through, what I suffer with every day and with my pelvic pain. And he was like, this is one less thing that you have to worry about, that you have to go through over the coming years because they didn't file [sic]. They didn't take their time that they had, and they didn't file." N.T. 6/20/17 pp. 26.

"And my husband and I started talking after that June 12th call and that night and just the process of everything that I went through over this trial, the embarrassment. I mean, that was humiliating to sit up there and talk about those personal things. It was humiliating to go sit back there and listen to people talking about it. And then through those next days after the 12th, I mean there was a wave of relief like through me. Like it was, I hadn't felt like that in a long time." N.T. 6/20/17 pp. 27-28.

Ms. Beltz then testified about how the possibility of protracted litigation due to Defendant[s'] untimely post-trial motion affects her.

"And now since last Tuesday I am physically ill over this. Like I am, I'm shaking like every day. I have like a panic inside of me because I know what I'm going to go through that they're allowed to do this, that, they're allowed to miss their deadline and then still put me through this." N.T. 6/20/17 pp. 28.

Ms. Beltz's testimony concluded on cross-examination with a discussion about whether she expected finality, or further litigation.

"I wasn't expecting anything like that unless the defense had filed in that ten days. That week after the 26th when Kila called me she discussed the fact that, I will say you, but the defense had ten days to file a motion for appeal. After that ten days if you had filed I would imagine we would have had a discussion in depth about that. We didn't have

- 17 -

discussions beforehand in depth that there was going to be a post-trial motion. There wouldn't need to be one if you didn't file anything, as you didn't. So that's my answer." N.T. 6/20/17 pp. 33-34.

This Court also had ample opportunity to observe Ms. Beltz during the trial from May 8, 2017 to May 26, 2017, during which, Ms. Beltz's private health issues reverberated throughout the courtroom for days, in front of complete strangers. For most of the trial, and especially during her own testimony, Ms. Beltz was visibly upset, sobbing openly inside and outside the courtroom. Ms. Beltz has endured physical and emotional trauma that will likely last for the rest of her life. As the aforementioned testimony demonstrates, accepting [Defendants'] untimely post–trial motion is prejudicial because it will only cause further harm to Ms. Beltz and abrogate the finality that she rightfully understood to be certain.

The Pennsylvania Rules of Civil Procedure are necessary and it's essential that litigants are able to rely on the uniformity and certainty they create. The ten-day deadline provided by Rule 227.1(c)(1) allows Ms. Beltz to reach a place of repose after the expiration of that deadline. This same rule that provides a safe-harbor for her jury verdict after ten-days also protects Defendants['] appellate rights from abridgement. When [Defendants] filed their post-trial motion 7 days late, they waived their appellate rights, knowing that this missed deadline ushers in the finality that this judicial system is set up to provide litigants. It was incumbent upon [Defendants] to preserve their issues for an appeal of Ms. Beltz's $2,160,000 jury award. This Court recognizes that Rule 126, discussed *supra*, can sometimes provide a lifeline for an untimely post-trial motion, but not under these circumstances.

This is not an aberration. This judicial system provided Ms. Beltz with finality and it functioned in the exact way it's intended to, based on fair rules that all parties involved in litigation are required to follow. A jury of her peers, during a fair trial, saw fit to compensate her. Accepting untimely post-trial motions that [Defendants] took an extra week to refine and, granting them an opportunity to vitiate Ms. Beltz's jury award after missing the filing deadline is palpably unfair and prejudicial to her because she believed that she could move on with her life.

Trial Court Opinion, 10/17/2017, at 8-11 (footnotes omitted; emphasis added).

Although Defendants suggest that we should reweigh the factors considered by the trial court and that no prejudice existed, we decline to do. The trial court provided a thorough explanation of why it concluded Defendants' "late filing actually work[ed] to prejudice the interests" of Beltz. *Leffler*, 696 A.2d at 166. Recognizing again that the trial court is afforded "broad discretion" in these matters, we conclude the court did not abuse its discretion in striking Defendants' post-trial motion as untimely.

Based on our analysis, we need not address Defendants' remaining claim.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/21/18